THE LEE HARDWARE CO., LIMITED, v. JOHNSON.

Opinion delivered February 18, 1918.

1. APPEAL AND ERROR—MOTION TO DISMISS APPEAL—FACTS OUTSIDE THE RECORD.—Under Kirby's Digest, section 1227, evidence of facts outside the record, occurring after the rendition of the judgment, and showing that appellant's further right of prosecuting an appeal has ceased, may be received and considered by this court on a motion to dismiss an appeal.

2. ATTACHMENT SALES—NECESSITY OF CONFIRMATION.—Under Kirby's Digest, section 385, attachment sales are subject to confirmation by the court. The contract of sale is not complete until the bid of the purchaser is. accepted by the court, and until acceptance there can be no enforcement of the contract by either party.

3. APPEAL AND ERROR—DISMISSAL OF APPEAL.—It is not the policy of the law with respect to litigated cases to decide questions which have ceased to be an issue by reason of facts having intervened rendering their decision of no practical application to the controversy between the litigants.

Appeal. from Columbia Chancery Court; *James M. Barker,* Chancellor; affirmed.

*McKay & Smith,* for appellant.

1. The deed was never delivered. 8 R. C. L. 973-4; 77 Ark. 89. Recording a deed merely raises a presumption of delivery, which may be rebutted. Delivery is a mixed question of law and fact. The test is whether the grantor by his acts, words or both intended a delivery. 8 R. C. L. 976; 77 Ark. 89; 108 *Id.* 53; 110 *Id.* 70; 111 *Id.* 314; 113 *Id.* 289.

2. The conveyance was a secret trust for the benefit of M. M. Johnson and fraudulent and void as to creditors. 33 Ark. 328; 74 *Id.* 186; 52 *Id.* 458; 86 *Id.* 225; 20 Cyc. 562-5-6; Bump. Fr. Conv. (4th Ed.), 222; 50 Ark. 289; 72 *Id.* 58; 74 *Id.* 186 and cases cited *supra.*

*Stevens & Stevens,* for appellees.

1. The deed was delivered. 77 Ark. 92; 97 *Id.* 283; 108 *Id.* 57; 111 *Id.* 314, 321; 113 *Id.* 289.

2. The deed was not fraudulent nor made to hinder and delay creditors. 56 Ark. 238; 96 *Id.* 538. No fraud was proven. The debt here was made after the deed was executed and delivered for record.

HUMPHREYS, J. Appellant instituted suit on the 23rd day of July, 1915, against appellees in the Columbia Chancery Court to cancel a deed executed by M. M. and S. E. Johnson to J. J. Johnson, on the 24th day of December, 1900, to the following lands, to-wit: N. ½ of the S. E. ¼ less three acres in the N. W. corner of said 80-acre tract, Sec. 23, T. 18 S., R. 22 W., in Columbia County, Arkansas; and a deed of trust executed by J. J. Johnson and Effie Johnson, his wife, to N. E. Wise, trustee for S. E. Johnson. It was alleged that the deed was voluntary and made in fraud of the rights of existing and sub-

sequent creditors; and that the deed of trust was without consideration, but if there was a valuable consideration, it was made to hinder and delay the creditors of M. M. Johnson and Mrs. S. E. Johnson participated in the fraud. On the same day, appellant filed a *lis pendens* notice in accordance with the statute.

On the 19th day of October, 1915, appellees filed answer controverting the material allegations of the bill.

The cause was heard by the court upon the pleadings and depositions of M. M. Johnson, J. J. Johnson, S. E. Johnson and R. E. Hayes, and a decree rendered dis- missing the bill for want of equity, from which an appeal has been properly prosecuted to this court.

M. M. and S. E. Johnson are the father and mother of J. J. Johnson, J. W. Johnson and Minnie Cherry. The land in question was the property of M. M Johnson, and he and his wife conveyed it by deed of gift to their son, J J. Johnson, on the 24th day of December, 1900. J. J. Johnson was six or seven years of age at that time. M. M. Johnson recorded the deed the date it was executed and the original remained in the clerk's office from that time until after the institution of this suit. A short time before this conveyance was made, M. M. Johnson gave J. W. Johnson and Mrs. Minnie Cherry an 80-acre tract, each. He afterwards sold a 40-acre tract to J. W. John- son. This comprised all his real estate except a 40-acre tract, which afterwards forfeited for taxes, and his home place of 84 acres which he still owns. Touching his finan- cial condition at the time of this conveyance, M. M. John- son testified, in substance, that he had borrowed some money and owed a few small accounts; that he had been sued for an amount he did not owe, but that he paid it, and was in condition to pay any other amount he owed; and that he was not involved at the time as surety for his brother. Mrs. S. E. Johnson testified that when they moved to Minden, Louisiana, her husband was indebted to John Souter and that she secured this indebtedness by a mortgage on an 80-acre tract of her own land. She had inherited 240 acres from her father's estate. Some

time after this, M. M. Johnson moved with his family to Minden, Louisiana, where he remained for about nine years. While there, he farmed and ran a small grocery store and cold drink stand. He then returned with his family to Columbia County, where they now live. In 1914, M. M. Johnson obligated himself as surety for his brother in the purchase of some gin machinery. He had purchased a place for $750 when he went to Minden, which was sold for $350 and applied to that indebtedness, leaving a balance of $750 due appellant. Appellant procured a judgment for that amount against M. M. Johnson in Louisiana, on the 29th day of January, 1915, and brought a suit on that judgment March 16, 1915, in the circuit court of Columbia County, Arkansas, and later procured a judgment thereon. This suit was brought for the purpose of subjecting the property in question to the payment of that judgment. In 1907, M. M. Johnson and his wife sold the timber on the land in question and executed a timber deed in which they covenanted that they were the owners of the land in fee. On January 20, 1914, J. J. Johnson and wife executed a mortgage on said real estate to Mrs. Sarai Emerson for $150, due one year after date. On January 19, 1915, they executed a deed of trust to N. E. Wise, as trustee for Mrs. S. E. Johnson, for $300, in order to raise money to pay the Emerson mortgage and to pay an indebtedness J. J. Johnson owed the Turner Hardware Company, which last amount had been reduced to judgment and was a lien on said property. After judgment had been obtained against M. M. Johnson in the circuit court, and about the time this suit was instituted, but before J. J. Johnson had actual knowledge of the pendency of the suit, he and his wife conveyed said real estate to his mother for $1,150 in settlement of the deed of trust theretofore executed to her and in payment of a $500 loan she had made him several years before for the purpose of going into business. Just prior to this time, J. J. Johnson had contracted a sale of the land to Luther Hunt for $1,150 but Hunt declined to consummate the deal when he ascer-

tained that the Turner Hardware Company had a judgment lien against the property. While in Minden, Mrs. S. E. Johnson exchanged an 80-acre tract of her individual land by oral contract with her son, J. W. Johnson, for the 80-acre tract M. M. Johnson had given him. Before the deeds were executed, M. M. Johnson and wife sold the pine timber on the 80-acre tract he had given his son, J. W. Johnson, and covenanted that they were the owners in fee of the land. J. W. Johnson sold the timber on the 80-acre tract he had exchanged for this tract. They later made deeds in keeping with the exchange agreement. When J. J. Johnson became twenty-one years of age, his father paid him $200 for the timber he had sold off the 80-acre tract he had given him, but was not certain whether he received $200 or $300 for the timber. M. M. Johnson paid all the taxes on the tract and controlled the lands and collected the rents until three or four years before the institution of this suit. When J. J. Johnson reached the age of eighteen or nineteen years, he assumed control of the place and appropriated the rents to his own use. The place was known as J. J. Johnson's by the members of the family and R. E. Hayes who rented it from J. J. Johnson for three or four years. No manual delivery of the deed was ever made. M. M. Johnson testified that he gave the infant son this land to equalize the gifts he had made to his grown children. He and his wife both testified that it was his intention to give J. J. Johnson the land in question. J. J. Johnson testified that he understood from childhood that the land had been deeded to him and that it belonged to him.

(1-2)  It is first insisted that the deed was not delivered, and, therefore, ineffectual. Manual delivery of a deed by the grantor and a formal acceptance by the grantee is not necessary to constitute a delivery of an instrument in law. The delivery is sufficient if it is manifest that the grantor intended to part with the deed as an effective conveyance. 8 R. C. L. 976; *Russell* v. *May,* 77 Ark. 89; *Stephens* v. *Stephens,* 108 Ark. 53; *Felker* v.

*Rice,* 110 Ark. 70; *May* v. *State Natl. Bank,* 59 Ark. 614; *Colquitt* v. *Stevens,* 111 Ark. 314; *Faulkner* v. *Feazel,* 113 Ark. 289. M. M. Johnson executed this deed and placed it of record, and the original deed remained in the clerk's office for sixteen years. This fact alone is a very strong circumstance indicating that he intended to release all control over the deed. Under the rule laid down by this court, the act of recording the deed raised a *prima facie* presumption of delivery which could not be overthrown by other than clear, convincing evidence. He had given his grown children, each, real estate and personal property equal in value to this 77-acre tract. It is quite natural that he and his wife should want to give their youngest son a farm also. Their statement to the effect that they intended the conveyance as an absolute gift is in keeping with human nature. It is not out of the ordinary for a father to control and manage the real estate of his minor children and to appropriate the rents and profits in excess of improvements, taxes, etc., where he is educating and maintaining the children. It is undisputed that he accounted to his son for the value of the timber sold. The Turner Hardware Company collected a debt from J. J. Johnson by proceeding against this property. J. J. Johnson executed a mortgage upon it to Mrs. Emerson, and afterwards to his mother to raise money to pay Mrs. Emerson and the Turner Hardware Company. He contracted a sale for this property to Luther Hunt for $1,150 and executed a deed to him but did not deliver it for the reason that Hunt decided not to buy it after he discovered the judgment lien in favor of Turner Hardware Company. He then sold it outright to his mother, without any actual knowledge on his part that the appellant was trying to subject it to the payment of his father's debt.

(3) We do not think that the facts and circumstances in this case, tending to establish a delivery of the deed in question, are overthrown by the showing that the father remained in possession of and controlled the land until his son reached the age of nineteen years, and sold

the timber thereon, for which he afterwards accounted, and that the tract conveyed to the other son finally found its way back to the mother.

But it is insisted that the conveyance to J. J. Johnson of the land in question was a fraud upon existing and subsequent creditors of M. M. Johnson.

In order to avoid a voluntary conveyance in favor of a subsequent creditor, an intention to defraud either existing or subsequent creditors must be proved by the facts and circumstances surrounding the transaction. The time elapsing between the date of the conveyance and creation of the debt may be considered in connection with the other circumstances in proof to ascertain whether a voluntary conveyance injured or defrauded a subsequent creditor or creditors. Existing creditors may be denied relief if they delay too long. *May* v. *State Natl. Bank,* 59 Ark. 614.

The only evidence tending to show that M. M. Johnson conveyed the property in question to defraud creditors appears in his own and wife's evidence. He testified that at the time he made this conveyance he had some money borrowed and that a suit was pending against him. He testified, however, that at the time he made the conveyance complained of, he owned forty acres aside from his homestead which afterwards forfeited for taxes, and that he owned considerable personal property in the way of cattle, etc.; that he paid the debt upon which he was sued, although he did not regard it as a personal obligation; that he owed only a few accounts which he paid the following fall; and that he had ample to take care of his debts.

Mrs. S. E. Johnson testified that when they started to move to Minden, Mr. Johnson owed John Souter a debt which she secured by mortgage on an individual 80-acre tract of land. Even if these facts were sufficient to establish actual fraud, which we doubt, it is quite certain, when considered in connection with the lapse of time between the date of the conveyance and the creation of

appellant's claim, that appellant was not injured or defrauded by the conveyance.

Under the facts and circumstances in this case, it is quite apparent that there is no equity in the bill. The decree of the chancellor in dismissing the bill for want of equity is affirmed.