GILLEYLEN v. SCHOOLFIELD.

Opinion delivered February 9, 1931.

144

*J. O. Livesay* and *Jones & Jones,* for appellant.

*Jas. D. Head* and *Shaver, Shaver & Williams,* for appellee.

McHANEY, J.   In 1924 A. B. Schoolfield and Walter E. Gray purchased from others a dry goods business in the town of Foreman, which they operated as partners until 1925, when the business was incorporated under the name of Gray & Company, with a paid up capital of $5,500, having three stockholders, the two above mentioned with Mrs. M. S. Gray, mother of Walter E. Gray, as the third stockholder.   Mrs. Gray, although seventy years of age at the time, was elected president, A. B. Schoolfield, vice president and bookkeeper, and Walter E. Gray, secretary and treasurer.   The business was thereafter operated as a corporation until March 1, 1929, when it was adjudicated a voluntary bankrupt.   The stockholders constituted the board of directors, and the records show only three formal meetings of either stockholders or directors.   W. E. Gray acted as his mother's agent in all matters concerning this business, and she gave it none of her active attention. Mrs. Schoolfield, the appellee, was a sales lady in the store, but upon the death of her husband, July 28, 1927, she became the bookkeeper and thereafter acted as such with the advice, assistance and counsel of W. E. Gray. On December 31, 1926, the books showed a net profit of $739.80 for the year 1926,

which Mr. Schoolfield and Mr. Gray divided, the individual account of each being credited with $369.80. Mr. Schoolfield was drawing a salary of $1,250 per year, and on December 31, 1927, his account was credited with a full year's salary, although he had died on July 28 preceding. At the same time, December 31, 1927, the books again showed a net profit, and Mr. Gray and Mrs. Schoolfield decided to divide a portion thereof, and she credited his account and hers with $604 each. All credits above mentioned as well as any hereafter mentioned were made with the knowledge, consent and at the direction of Walter E. Gray, acting for himself and his mother. All the above amounts of credits to the Schoolfield accounts were withdrawn by Mrs. Schoolfield in merchandise and cash and proper charges made. At the time of Mr. Schoolfield's death, the company was indebted to Mrs. Schoolfield on a note in the sum of $5,259.27. In the fall of 1927, this note was reduced by payments from collections from the business to $1,159.27, and carried into 1928 as bills payable on the company's books and paid that year.

This suit was brought by the trustee in bankruptcy to collect from appellee the amount credited to her account as a division of profits for the years 1926 and 1927, for the unearned salary of Mr. Schoolfield after his death, and for another item or two, hereinafter discussed, in which it is alleged that the company was insolvent and the payments made to her were in fraud of the rights of creditors. The court dismissed appellant's bill for want of equity, and the matter is here by appeal.

It is conceded that a corporation cannot lawfully declare and pay dividends to its stockholders when it is insolvent. The division of the profits above referred to amount to a payment of dividends; and, if the corporation was insolvent at the time, such payments would work a fraud on existing creditors. We do not think the record in this case shows Gray & Company to be insolvent when these dividends were credited nor when the salary of Mr. Schoolfield was credited for the whole year of 1927, although dead since July. In 14A C. J. 881,

it is said: that "the most commonly accepted definition of 'insolvency,' as applied to corporations, is inability to pay debts as they mature in the usual course of business, either from available assets or from any honest use of credit." And on page 883 it is said: "In determining whether a corporation is insolvent, liability to its stockholders on its capital stock is not to be taken into consideration." Or, as said in *Radcliff* v. *Clendenin,* 232 Fed. 61: "The sufficiency of its assets and its ability to pay its stockholders the par value of their stock in addition to the payment of the debts of the corporation are irrelevant to the issue of insolvency."

Eliminating therefore the capital stock from the liabilities, the assets of the corporation were largely in excess of the liabilities, either as of December 31, 1926, or 1927. But appellant says included in the assets were the face value of all the notes and accounts, and that it is well known that such notes and accounts are largely of little or no value. There is no showing in the record that any particular note or account due the company was not collectible, and we cannot take judicial notice that they were not. Moreover, the undisputed proof is that only such notes and accounts were included in the assets as were regarded as good. Furthermore, early in 1928, the company was able, by pledging its notes and accounts to the bank, to borrow a sufficient sum of money to pay all creditors in full. It is argued by appellant that the books of the company did not correctly reflect the amount of its debts; that its note to appellee for $5,259.27, above mentioned, did not correctly appear in her account. It did not appear in her account at all, but in bills payable account. As above stated, the amount of this note was reduced, in the fall of 1927 to $1,159.27 and was paid in full in 1928. On December 31, 1927, the bills payable account correctly reflected the balance due on said note. The true condition of the company was reflected by the books, and on February 14, 1928, the annual statement required by law was filed with the county clerk, which was

notice to all persons of the condition of the company. Creditors in bankruptcy, represented by appellant as trustee, are all subsequent to this time, and it is difficult to see what right they have to complain of the matters above mentioned without proof of an actual intent to defraud future creditors. There is no presumption to defraud future creditors by a voluntary conveyance, and such a conveyance is not *per se* fraudulent. *Lee Hardware Co.* v. *Johnson,* 132 Ark. 462, 201 S. W. 289; *Jenkins* v. *Smith,* 170 Ark. 806, 281 S. W. 377; *Home Life & Accident Ins. Co.* v. *Schichtl,* 172 Ark. 31, 287 S. W. 769.

There remains only one matter to discuss, and that is the sale by appellee to Mrs. Gray of the $2,000 stock in Gray & Company owned by the estate of A. B. Schoolfield. The sale was handled in this manner: Appellee desired to sell the stock of her late husband, so in December, 1927, W. E. Gray, acting for his mother, purchased same at par for his mother. (Another strong circumstance indicating the company was solvent at that time.) Appellee loaned Mrs. Gray the money to purchase this stock and took a note from her, secured by a mortgage on real estate. She credited Mrs. Gray's account on the books of the company with the amount of money loaned, and the company used the money in its business. Appellee then withdrew from time to time in merchandise and cash the amount to Mrs. Gray's credit with the knowledge and consent of W. E. Gray and with the approval of Mrs. Gray. We see no fraud in this. Mrs. Gray was not indebted to the company. She had a credit balance on its books of $2,000 which she had the right to withdraw herself, or to permit another so to do, and her account to be charged therewith.

We find no error, and the decree is accordingly affirmed.