### MORAN v. MORGAN et al.

#### (Circuit Court of Appeals, Second Circuit. May 10, 1918.)

#### No. 230.

1. BANKRUPTCY ☜303(3)—ACTIONS—EVIDENCE.
    In a suit by the trustee of bankrupts to set aside a conveyance made before the filing of the petition, on the ground that it was in fraud of creditors, evidence *held* to show that the bankrupts were insolvent at the time the deed was first executed.

2. APPEAL AND ERROR ☜1009(1)—REVIEW—FINDINGS OF FACT.
    Findings of fact in equity suit to set aside a conveyance as in fraud of creditors will not ordinarily be disturbed on appeal.

3. FRAUDULENT CONVEYANCES ☜49(1)—PAROL TRUST.
    While a parol trust made at the time of the delivery of a deed is within the statute of frauds, nevertheless it supports a conveyance which would otherwise be open to attack as in fraud of creditors.

Appeal from the District Court of the United States for the Southern District of New York.

Bill by William L. Moran, as trustee in bankruptcy of Charles Hobart Morgan and Albert B. Morgan, individually and composing the firm of Morgan Bros., against Charles Hobart Morgan and others. From a decree for complainant, defendants Morgan and wife appeal. Reversed and remanded.

Appeal from a decree in equity entered on the 14th day of December, 1916, setting aside a deed of real property as in fraud of creditors. The suit was brought by the trustee in bankruptcy of the firm of Morgan Bros. against Charles Hobart Morgan, one of the bankrupts, and Harriet M. Morgan, his wife, and the Blue Bird Motor Cab Company, of whom only the two first appeal. The complaint alleged that on the 18th day of January, 1916, within four months after the filing of an involuntary petition against the bankrupts, Charles Hobart Morgan undertook to convey to his wife, Harriet M. Morgan, certain real property in the city of New Rochelle, county of Westchester, and on that day recorded a deed to Harriet Morgan to that effect; that the deed was without consideration, and that the firm, including Charles H. Morgan, was insolvent; that the Blue Bird Motor Cab Company had some subsequent interest.

---

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The answer contained certain denials, and as a defense alleged that on the 9th day of February, 1909, one Charles V. Morgan, the father of Charles Hobart Morgan, executed a deed to Charles H. Morgan of the premises in question, upon the understanding and agreement that the same should be and become the property of the defendant Harriet M. Morgan and the children of Charles H. Morgan and Harriet M. Morgan, subject to the use of the same by the defendant Charles H. Morgan and Albert B. Morgan, composing the firm of Morgan Bros., so long as they remained in business and required the use of the same; that subsequently, and on the 2d day of October, 1913, Charles H. Morgan, for certain valuable considerations, executed a deed of the premises to Harriet M. Morgan subject to the tenancy of Morgan Bros., and presumptively in pursuance of the aforesaid trust.

Upon the trial it developed that Morgan Bros. had for many years been engaged as liverymen in the city of New Rochelle, but that this business had slowly fallen in value and extent after the introduction of motorcars, until their embarrassment finally became such that in April, 1916, they had assigned for the benefit of creditors. On the 16th day of May, 1916, their creditors filed an involuntary petition in bankruptcy against them, which was followed in due course by an adjudication on the 23d day of May. The plaintiff was appointed their trustee in bankruptcy and by permission of the court began this suit. Much testimony was taken at the trial touching the solvency of Morgan Bros. on the 2d day of October, 1913, the date of the conveyance by Charles Hobart Morgan to his wife, Harriet M. That they were heavily indebted was conceded by both sides, and the issue turned substantially upon the value of the horses, carriages, hearses, and the like, together with their accounts. Of the latter they had a large number on the books, but many were old and uncollectible. The District Judge found that they were insolvent on the 2d day of October, 1913, and, applying the rule in New York that a voluntary conveyance was presumptively in fraud of creditors when the grantor was insolvent, decreed that Harriet M. Morgan should reconvey the property to the trustee in bankruptcy.

As alleged in the answer, Charles V. Morgan, the father of the bankrupts and the original owner of the livery business, conveyed the property in question on February 9, 1909, to his two sons, Charles H. and Albert B., by full-covenant deed recorded May, 1914, of which the habendum read as follows: "To have and to hold the above-granted premises unto the said Albert B. Morgan so long as he shall remain and continue in the livery business and shall require the use of said premises for such business, and upon his death or upon his withdrawal from such business then unto the said Charles H. Morgan, or his heirs and assigns, forever."

The defendants upon the trial attempted to prove a conversation had between Charles Hobart Morgan and his father, Charles V., at the time of the execution of the deed of February 9, 1909. This conversation was ruled out. The defendant offered to prove the substance of the fourth article of the answer, but this offer the court rejected upon the ground that if proven it would constitute no defense to the action.

Samuel F. Swinburne, of New Rochelle, N. Y. (Richard Leo Fallon, of New Rochelle, N. Y., on the brief), for appellants.

Michael J. Tierney, of New Rochelle, N. Y., for appellee.

Before WARD and ROGERS, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). [1, 2] We are not disposed to disturb the finding of the trial judge upon the value of the assets. If anything, we think that he overestimated them. We may take the cash at $225 and the agreed value of the real estate at $4,533. The value of the accounts was certainly not over $4,800; that is, what could be collected upon them

less the cost of collection, which at $300 was most moderate. There remained only the horses, wagons, harness, and the like, which the District Judge put at $8,000. These assets Charles H. Morgan swore on April 25, 1916, to be worth less than $3,000, and the chattels other than the horses realized at auction only $2,000. Even though we were to accept the value placed upon the horses by Davis at $175 apiece, we should have but $4,550, and it would be necessary to place a value upon the wagons, harness, etc., at $6,000 in order to establish a solvency. This would be three times what they sold for at auction, 2½ years later, and that, too, at a sale which was described as a good one.

Nor can we see any reason to differ with the District Court's treatment of the testimony of Davis and Ives. At best their estimates were no more than intelligent guesses upon a subject-matter which is not susceptible of accurate ascertainment. In such cases everything depends upon the appearance and general credibility of the witnesses, and we can see no reason why he should accept their estimates at so much higher values than the bankrupts chose to put upon them in the assignment schedules which they made at a time when they had no motive to undervalue, and when, indeed, they must have been disposed to put the value as high as in conscience they could.

Besides, this deed was kept off record for two years and more, for reasons which were not explained. The business at the time of its execution had for long been obviously going off, and must have been known to be doomed from the general conditions controlling it. All these factors we treat as of consequence. Finally, unless there is some very positive reason, we do not think we should disturb the finding below in such a case as this. Our own conclusions were certainly not so good as those of the District Court, which had an opportunity to measure the witnesses that came before it. We therefore accept the finding of insolvency.

We say this without any consideration of the effect of the payment to Downing to revive the debt. That payment was made in 1914, a year after the conveyance, and it is hard to see how it could affect the situation in 1913. Yet if we assume that it did not revive the debt, the difference is only $2,500 in the outstanding indebtedness on October 1, 1913, which still remained $19,615.25. The finding of insolvency is not in our judgment affected by that question.

The deed of Charles V. Morgan created an estate for life in Albert B. Morgan subject to condition subsequent with remainders over. We need not consider whether, in view of the habendum to "Charles H. Morgan or his heirs and assigns," it created less than a fee in Charles H. Morgan. New York Real Property Law (Consol. Laws, c. 50) § 240 (1). In any case Charles H. Morgan had at least an estate for life, which came into possession when the livery business came to an end by the assignment for the benefit of creditors in April, 1916. Moreover, the remainder, whatever the quantum of the estate, was alienable and was subject to the claims of creditors. As such it could be the subject of a fraudulent conveyance and such it was except for the trust.

252 F.—46

[3] Thus in our judgment the case turns on the validity of the defense set up in the fourth article of the answer, which alleged a parol trust made at the time of the delivery of the deed, that the property should in effect be held in trust for the wife and children of Charles H. Morgan, and that trust under the statutes of New York was void. Real Property Law, § 242; Hutchins v. Van Vechten, 140 N. Y. 115, 35 N. E. 446. But it is nevertheless well settled that such parol trusts, although within the statute of frauds, are valid to support a conveyance which would otherwise be in fraud of creditors. The doctrine originated in a ruling of Vice Chancellor Leach in Gardner v. Rowe, 2 Sim. & St. 346, which Lord Eldon affirmed in 5 Russell, 258, and his authority seems to have been sufficient to give the doctrine general currency in this country. Silvers v. Potter, 48 N. J. Eq. 539, 22 Atl. 584; Iauch v. De Socarras, 56 N. J. Eq. 538, 39 Atl. 370; Carver v. Todd, 48 N. J. Eq. 102, 21 Atl. 943, 27 Am. St. Rep. 466; Richmond v. Bloch, 36 Or. 590, 60 Pac. 385; Desmond v. Myers, 113 Mich. 437, 71 N. W. 877; Hays v. Reger, 102 Ind. 524, 1 N. E. 386; Davis v. Graves, 29 Barb. (N. Y.) 480; Dunn v. Whalen, 66 Hun, 634, 21 N. Y. Supp. 869 (G. T. 5th Dept.). Whatever may be thought of it on principle, we regard it as too well settled on authority to be disregarded, and, in so far as the case turns upon it, we feel constrained to hold that the fourth article of the defense, if proved, would be sufficient.

The cause will therefore be remanded, with instructions to try the fourth article of the answer, and, if it be proved, to dismiss the bill, but, if· the defendant do not succeed in proving it, to reinstate the decree for the plaintiff, without further proof.

---

⬣⇒For. other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes