CAMPBELL *v.* CARLISLE.

4-3875

Opinion delivered June 3, 1935.

*Sullins & Perkins* and *John W. Nance,* for appellants.

*V. James Ptak,* for appellees.

SMITH, J. John W. Campbell and Mary J. Campbell, his wife, acquired title, by four separate deeds, to four separate parcels of land, as tenants by the entirety, prior to September 20, 1933, on which date Clem Carlisle filed a suit for damages against Mr. Campbell, which eventuated in a judgment for $2,500. The judgment was rendered on January 12, 1934. An execution, which issued on this judgment, was levied upon all the lands which Campbell and his wife had acquired as tenants by the entirety, and the lands were sold under this levy on May 30, 1934, to satisfy the judgment. Fannie Walker and Pat Johnson became the purchasers at the execution sale, and executed purchase money notes as provided by statute. Before the maturity of the notes, Mrs. Campbell brought suit against Carlisle, the judgment creditor, and Fannie Walker and Pat Johnson, the purchasers at the execu-

tion sale, and the sheriff, who had made the sale, praying that the sale be set aside, and that the certificates of purchase executed by the sheriff be canceled.

At the trial from which this appeal comes Mrs. Campbell offered in evidence the record of the four deeds under which she and her husband had acquired title as tenants by the entirety; and she also offered the record of four deeds from her husband to her, describing the same lands, in each of which it was stated that "Grantor conveys his undivided half interest in the above-described lands." Each of these deeds was dated February 1, 1932, and each purported to have been acknowledged before a notary public a few days later. Two of the deeds were filed for record May 26, 1934, the others on May 28, 1934.

Mrs. Campbell testified that, after the execution of these deeds, she had sole possession of all the lands, and collected the rents therefrom except the land described in one deed, which became and is the homestead. She testified also that, after the delivery of these deeds, she caused the lands to be assessed for taxes in her separate name and paid the taxes thereon. The record, however, does not support her testimony in regard to the assessment of the lands for taxes nor the payment of the taxes thereon. It appears that they were assessed in the name of J. W. Campbell, and continued so to be, until they were assessed for the taxes of 1934. It does not appear that she ever paid the taxes, although she testified that she furnished the money for that purpose; nor does it appear that any receipt for the taxes was ever issued to her in her name. It does appear that Mr. Campbell paid the taxes in his own name in 1934 for the year 1933, and that a month or more later he returned to the collector's office and had the word "Mrs." written before his own name on the tax receipt.

There appears to be no question but that the effect of the deeds from Campbell to his wife was to denude him of all his property, and it is an undisputed fact that the deeds were not placed of record until after the judgment against Mr. Campbell had been rendered. Mrs. Campbell admitted that the deeds were entirely volun-

tary, and that there was no consideration for any of them except love and affection.

The decree of the court reflects that the chancellor was of opinion that the apparent sale of the whole title under a judgment against Mr. Campbell alone was error, and he ordered it set aside. It was further ordered that an *alias* execution issue, and that it be levied upon Mr. Campbell's interest in all the lands conveyed to him and his wife as tenants by the entirety, except the homestead, which was not ordered sold.

We pretermit a discussion of the question whether Mr. Campbell could convey to his wife his interest in the lands which they had acquired as tenants by the entirety, as we have concluded that the conveyance from the husband to his wife was fraudulent and void for that reason, even though one spouse has the right to convey to the other lands which they own as tenants by the entirety.

It is settled law that " 'conveyances made to members of one's household and to near relatives of an embarrassed debtor are looked upon with suspicion and scrutinized with care; when voluntary they are presumed fraudulent; and when the embarrassment of the debtor proceeds to financial wreck, such conveyances are conclusively presumed to be fraudulent as to existing creditors.' (Citing cases.) " *Kaufman* v. *Citizens' Bank,* 189 Ark. 115, 70 S. W. (2d) 572.

The effect of the deeds was to denude Mr. Campbell of all his property subject to execution, and therefore rendered him insolvent. Mrs. Campbell admits the conveyances were voluntary. She testified that, after the execution of these deeds, she had sole possession of all the lands which they described, except the portion thereof which became the homestead. But this testimony cannot be regarded as undisputed, because she is an interested party, the plaintiff in the case, and the testimony does not support her statement that she assessed and paid the taxes in her own name. *Skillern* v. *Baker,* 82 Ark. 86, 100 S. W. 764; *Missouri Pacific Rd. Co.* v. *Trotter,* 184 Ark. 790, 43 S. W. (2d) 762.

The officer who certified the acknowledgments as having been taken by him was not called as a witness, and

the deeds were not filed for record until after the judgment against Mr. Campbell had been rendered. The deeds purport to have been acknowledged before the institution of the suit against Mr. Campbell, but Mrs. Campbell did not testify that she did not know the suit was in the offing on the date the deeds were acknowledged. Mr. Campbell did not testify at all.

There is a difference in the quantum of proof required to show that a conveyance was fraudulent as to existing creditors from that required to establish fraud as to subsequent creditors. This distinction was pointed out by Mr. Justice RIDDICK in the case of *May* v. *State National Bank,* 59 Ark. at page 624, 28 S. W. 431, where it is said: ''While it is now settled by the repeated decisions of this court that actual fraud must be shown to avoid a voluntary conveyance in favor of a subsequent creditor, yet by this is meant only that, as to the subsequent creditor, an intention to defraud must be proved, while, as to the existing creditor under the same circumstances, it may be presumed, even though the transaction be entirely honest.''

Now, if the good faith and validity of the deeds from Mr. Campbell to his wife were tested as of the date they were filed for record, the case would present no difficulty. As they were voluntary, and were from a husband to his wife, and operated to render him insolvent, they would, if so tested, be held fraudulent as a matter of law. The case of *Kaufman* v. *Citizens' Bank,* 189 Ark. 115, 70 S. W. (2d) 572, so expressly decided. But, even though they were executed and delivered on the date they purport to have been acknowledged, their good faith and validity would still be a question of fact, and, as Mrs. Campbell's prayer for relief is based upon the assumption of their validity, the burden of establishing that fact was upon her.

It was held in the case of *Buchanan* v. *Williams,* 110 Ark. 335, 160 S. W. 521 (to quote the fourth headnote), **that:** ''A voluntary conveyance, made with an actual intent to cheat, hinder or defraud either existing or subsequent creditors, is void as to such creditors.''

The case of *Wilks* v. *Vaughan,* 73 Ark. 174, 83 S. W. 913, turned upon these facts recited in that opinion: "The conveyances were all made after the debt was incurred to the bank, and only a short time before judgment thereon, some a few days, and the farthest less than three months. Wilks (the grantor) was practically denuded of all his property after they were made." In answer to the query as to whether the conveyance so executed was fraudulent, the court•said: "Certainly, these conveyances, made so shortly before this judgment, divesting the debtor of all tangible assets, to near relatives, were sufficient to cast the burden of proving the good faith upon the parties to them." The case of *Leach* v. *Fowler's Devisees,* 22 Ark. 143, is to the same effect. See also *Crill* v. *Trites,* 186 Ark. 354, 53 S. W. (2d) 577.

The chancellor does not appear to have made an express finding as to whether the conveyances were fraudulent, although the decree rendered might have been put upon that ground. However, the testimony does sufficiently impeach the deeds from Mr. Campbell to his wife so as to cast upon her the burden to show good faith; and we think she failed to meet that burden.

It was held in the case of *Moore* v. *Denson,* 167 Ark. 134, 268 S. W. 609, that real property owned by a husband and wife by entireties is subject to sale under execution to satisfy a judgment against the husband. The effect of the sale is a question not presented by this appeal, but that question was also disposed of in *Moore* v. *Denson, supra.*

We conclude that the decree of the court below is correct, and it is therefore affirmed.