## AMERICAN BONDING CO. OF BALTIMORE v. HORD et al.

### No. 11122.

Circuit Court of Appeals, Eighth Circuit.
July 20, 1938.

Rehearing Denied Aug. 15, 1938.

Horace Chamberlin, of Little Rock, Ark., for appellant.

Wallace Townsend and S. S. Jefferies, both of Little Rock, Ark., for appellees Claude B. Hord and others.

J. L. Ingram and T. J. Moher, both of Stuttgart, Ark., for appellees John G. Hord, Jr., and another.

Before GARDNER, WOODROUGH and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

The American Bonding Company, a judgment creditor of Claude B. Hord, brought this suit in equity to set aside as fraudulent a deed which Claude B. Hord made to his father, and to subject the property described in the deed to the payment of the debt due the plaintiff. The trial court found for the defendants and dismissed the bill. The plaintiff appeals.

The property involved is a lot with a store building upon it in the business section of Stuttgart, Arkansas, worth between eight and ten thousand dollars. It stood of record in the name of Claude B. Hord from July 13, 1932, until April 27, 1935. Then a warranty deed was put on record purporting to convey the property from Claude B. Hord to his father. Then on April 11, 1936, another warranty deed was recorded purporting to convey it to Claude B. Hord's son. There was no money consideration for either deed. The grandfather, father and son were all made parties defendant to the plaintiff's bill.

It appears that Claude B. Hord was a partner in a contracting firm known as the Murtishaw Construction Company, which was the successful bidder on a contract for road work let by the Arkansas State Highway Commission, and on January 16, 1935, the plaintiff bonding company went on the firm's construction bond to the Highway Commission in the amount of $33,642.39. On the same day, Claude B. Hord executed an indemnity bond to the plaintiff obligating himself to pay all loss and expenses incurred by plaintiff by reason of the construction bond. The agent of the bonding company testified that before the company accepted Mr. Hord on the indemnity bond, Mr. Hord told him that he owned a business building in the business section of Stuttgart. The agent caused a "run" of the records to be made and got a report from the man who made the search that Mr. Hord owned the property in suit. He said that without that property the firm could not have qualified on the bond. The vice president of plaintiff testified that when the written application for the bond was submitted to the bonding company it was determined that the financial condition of the partnership would not warrant the execution of the bond by plaintiff, but he said "We investigated Mr. Hord's financial condition, which we found satisfactory, and thereafter we executed the bond upon Mr.

Hord first delivering to us his indemnity agreement." Mr. Hord denied that he told the agent he owned the property.

Suits were brought and judgments were recovered by material men and others against the partnership and also against the bonding company and the bonding company was obliged to pay. It in turn sued Mr. Hord on account of the construction bond and on the indemnity bond and recovered the judgments against Mr. Hord which are sought to be enforced against the store building in this action. The judgments have been recorded in the county where the store property is situate in accordance with the lien statute of Arkansas (Sec. 8255, Pope's Digest Statutes of Arkansas), and the court found them valid and unpaid.

But the court concluded that the debtor Claude B. Hord never was the owner of the store property in question. The property had been deeded to him by his father by warranty deed executed January 12, 1931, and recorded July 13, 1932. But the conclusion of the court was that the deed, "did not convey the title to the son but was merely a deed of trust, the beneficial interest remaining in [the father] and the son holding the said lot for the purpose of managing the same for the benefit of the father * * * that during the time [the son] was the holder of the record title of the lot he was merely a trustee for his father."

The warranty deed purporting to convey the property from Claude B. Hord to his father which was put on record April 27, 1935, was executed and acknowledged before a notary public on August 22, 1934. The trial court concluded that when Claude B. Hord executed the deed to his father on August 22, 1934, "he was fulfilling the agreement he had with [his father] and thereby carried out his trust agreement."

The trial court also found that the father "was at all times herein complained of in possession of [the property] through his tenants who paid the rent to him."

Accordingly, the court determined that the plaintiff was not entitled to have Claude B. Hord's deed to his father set aside for fraud.

The court did not make findings upon the particulars of the facts but there are few material conflicts in the testimony.

The questions arise upon the inferences to be drawn and the law applicable.

It is contended for the bonding company under appropriate assignments of error that there was not sufficient evidence to sustain the conclusion that Claude B. Hord held the property for the father or to reconvey it to him, and that under the law of Arkansas the testimony requires the determination that the transfer to the father was fraudulent as to the bonding company.

The federal jurisdiction is derived from diversity of citizenship (the judgments exceeding three thousand dollars), and we have only to apply the law of Arkansas.

Section 6064, Pope's Digest, provides:

"Declaration of trust. All declarations or creations of trusts or confidences of any lands or tenements shall be manifested and proven by some writing signed by the party who is or shall be by law enabled to declare such trusts, or by his last will in writing, or else they shall be void; and all grants and assignments of any trusts or confidences shall be in writing, signed by the party granting or assigning the same, or by his last will in writing, or else they shall be void."

There is no claim that there ever was any writing purporting to evidence any express trust imposed upon the son towards the father with reference to the property in question. The conclusion that such a trust was created rests solely upon the oral declarations of Claude B. Hord himself. Such oral declarations were objected to as incompetent to establish an express trust in the land and their incompetency for that purpose is apparent under the quoted statute. If there was such an oral agreement for an express trust it was void. Bray v. Timms, 162 Ark. 247, 258 S.W. 338. On the other hand, the decisions of the supreme court of Arkansas have settled that where fiduciary relationship exists as in this case (between a mature son and his aged father), the invalidity of an express trust agreement clearly established does not convert into a gift a transfer which was not intended to be a gift. An oral agreement and the surrounding circumstances will be taken into consideration and in a proper case, and when breach of fiduciary obligation

is shown, restitution will be enforced in equity. Bray v. Timms, supra. See also Sinclair v. Purdy, 235 N.Y. 245, 253, 139 N.E. 255. It is also held that the obligation of a fiduciary grantee who takes property subject to an oral trust agreement is sufficient as a moral obligation to constitute consideration for a return of the property to the grantor from whom it came. Smith v. Ellison, 80 Ark. 447, 97 S.W. 666; Moran v. Morgan, 2 Cir., 252 F. 719; McLaughlin v. Corcoran, 104 Mont. 590, 69 P.2d 597; 64 A.L.R. 576, note.

The question therefore is here presented whether there was sufficient proof that Claude B. Hord took the land from his father in trust to justify the court in holding that there was consideration for his reconveyance of it back to his father. The deed by which the father originally conveyed to the son was one of absolute warranty. It was of record and the supreme court of Arkansas has declared that there is a strong presumption against the existence of any secret orally created trust. Such trust can not be found upon a mere preponderance of the evidence. Bray v. Timms, supra. It must be established by clear, satisfactory and convincing evidence. Id.

Turning to the evidence which tends to throw light upon the nature of Claude B. Hord's right in the property during the time it stood of record in his name under the warranty deed from his father, we observe that the property was rented throughout the period to a firm of tailors and that they paid the rent by depositing their checks from month to month in the local bank to the credit of Claude B. Hord. Mr. Hord admitted that he was the one who attended to the property. He said his father had had some words with one of the tenants and that his father told him that he did not want to go back there, and his father directed him to attend to the property. At one time the tenants went into bankruptcy and the trustee paid three months' rent for the property by check to the attorney for Claude B. Hord who endorsed and collected it in that capacity in July, 1936. One of Claude B. Hord's partners in the construction firm testified that in February, 1935, Mr. Hord told him that he owned a store building in Arkansas county and that he got some clothes there and that he was taking clothes for rent due from the tenant. In 1934 a policy of insurance on the property for $2,500 was issued to Claude B. Hord. It also appears that Claude B. Hord's son is being educated at a university and the income of the property is being applied to paying his expenses. There was in evidence a correction deed, from the father of Claude B. Hord to a daughter, the sister of Claude B. Hord, in which deed the grantor's intent is expressed "to convey to her the above described property in fee simple, the same as I have conveyed other property to my other heirs."

On the other side, there was testimony that the father had drawn some checks against the account of the son in the local bank—signing them Claude B. Hord by John G. Hord, Sr. It did not appear how many such checks had been drawn. None are included in the record. He also paid three premiums on the insurance policy on the property issued to Claude B. Hord. There was, however, no evidence of any overt acts of ownership over the property by the elder Mr. Hord and the trial court was in error in concluding that the father was at all times in possession. The possession of property which gives notice of a claim of ownership thereto must be adverse, exclusive, unequivocal and must be inconsistent with the claim of any other person. Scott v. Carnes, 183 Ark. 650, 37 S.W.2d 876. The property was in the physical possession of the tenants but the record owner Claude B. Hord had dominion and control over the tenants and all the rents.

Neither the father nor the tenants were called as witnesses to lend corroboration to Claude B. Hord. One of the sons, John G. Hord, Jr., was a witness and he offered a certificate by a doctor to the effect that the father was eighty years old, suffered from high blood pressure, disease of the heart and in the past five years had suffered a stroke and "because of these things was not physically able to make the trip to Little Rock to testify." But the suit was pending nearly a year before the date of the alleged certificate and there was no showing that the father had not been entirely able to give his deposition.

The lack of any testimony from either the father or the tenants adds to the suspicion with which the court must scrutinize the oral testimony of Claude B. Hord that he was holding the property upon a trust agreement with his father contrary to the evidence of the recorded title. Foust v. Munson S. S. Lines, 299 U.S. 77, 86, 57

S.Ct. 90, 95, 81 L.Ed. 49; Mammouth Oil Co. v. U. S., 275 U.S. 13, 52, 48 S.Ct. 1, 10, 72 L.Ed. 137; Kirby v. Tallmadge, 160 U.S. 379, 383, 16 S.Ct. 349, 40 L.Ed. 463.

Turning directly to the warranty deed executed by Claude B. Hord to his father on August 22, 1934, the evidence is undisputed that Claude B. Hord was not insolvent or indebted at that time. There is no evidence that he was then contemplating incurring the debts involved herein. He first entered into the obligations on the construction bond and the indemnity bond in January of 1935. He has contended that his indebtedness to the bonding company did not actually accrue until much later when the bonding company was obliged to pay the creditors of the partnership. His liability is asserted to have been contingent until then. But as the undertaking to the bonding company ultimately became absolute and was put in judgment, the fact that no default thereon had occurred before the recording of the deed to the father is immaterial. Williams v. Bizzell, 11 Ark. 716; 12 R.C.L. 498, Sec. 29; 27 C.J. 473, Sec. 113; 71 A.L.R. 354, note; Bigelow on Fraudulent Conveyances (rev. ed.) 167; Bump on Fraudulent Conveyances, (4th Ed.) 501, Sec. 503; Moore on Fraudulent Conveyances, 205, Sec. 13.

Although his deed to his father was executed before Claude B. Hord became obligated to the bonding company, it was not recorded until some seven days before he committed the acts which rendered the partnership Murtishaw Construction Company insolvent. The date of the recording of the deed to the father was April 27, 1935, and on May 4, 1935, Mr. Hord withdrew $9,500.00 from the assets of his firm and thereby left the firm without any means to pay the material men and others to whom it owed money. Although as a partner he was himself liable to such material men and other firm creditors, he had nothing leviable outside of the store building and the firm's creditors were left to their suit against the bonding company.

Testimony was adduced from Claude B. Hord and members of the Hord family to the effect that in August, 1934, the father requested the reconveyance of the property to him because he was then improved in health. He was apprehensive that the health of Mrs. Claude B. Hord might necessitate her and her husband seeking a change of climate. The deed dated August 22, 1934, was accordingly executed by Claude B. Hord and his wife and was delivered to the father on an occasion when the three were in Hot Springs. It was seen in the father's possession by members of the family. But when it was put on record a few days before the withdrawal of the money from the partnership, the records in the office of the recorder of deeds show that at the time of the recording the deed instructions were given to return the deed to the grantor and it was mailed to Claude B. Hord.

The statutes of Arkansas protect both prior and subsequent creditors against fraudulent conveyances, Home Life & Accident Ins. Co. v. Schichtl, 172 Ark. 31, 287 S.W. 769, 771. The Arkansas law applicable to such a conveyance from a son about to render himself insolvent to his father and the recording thereof which we have to consider in this case, was declared by the supreme court of the state in Kaufman v. Citizens' Bank, 189 Ark. 113, 115, 70 S. W.2d 572. Later, on June 20, 1938, that court reaffirmed its holdings in its opinion of that date in Chronister v. Jerigan, Bank Commissioner, Ark., 119 S.W.2d 538. In the last case the court says:

"The validity of these deeds and the intentions of the parties in reference to their execution and the facts and circumstances surrounding their execution must be determined as of the date the deeds were filed for record and not on the date they were executed. Kaufman v. Citizens' Bank, 189 Ark. 113, 70 S.W.2d 572. As stated above, on the date these deeds were recorded the record reflects that both W. J. Chronister and A. N. Falls were insolvent and execution proof. In the case of McConnell v. Hopkins, 86 Ark. 225, 110 S.W. 1039, this court ruled that: 'Where a husband's deeds to his wife were kept from the record, whether with fraudulent intent or not, the law will not permit her to assert her title, upon his subsequent insolvency, as against those who gave him credit on the basis of his apparent ownership of property.'"

We think the decisions are determinative of the case at bar. It is clear from the testimony in this case that Claude B. Hord obtained the credit upon which he incurred the indebtedness to the bonding company on the representation and faith

of his ownership of the store building in Stuttgart. He had the record title and outward indicia of ownership and possession of that property and of the rents and profits therefrom. At the time the indebtedness was incurred, the deed to the father was held off the record. When it came to be presented for record, it was on the eve of Claude B. Hord's withdrawal of assets from the co-partnership that spelled complete insolvency and inability to pay creditors for him and his firm. Looking at the circumstances of the transaction as of that date, the common and familiar earmarks of a fraudulent transfer are apparent. The transferrer was left stripped of all means to pay his debts but his immediate family, first his father and then his son in college, assumed to take the property over without the payment of anything of value. It was the duty of the court to scrutinize with suspicion Claude B. Hord's claims that he had held the property on a secret trust resting in parol and that the transfer to his father was in fulfillment of such trust. His own interested and uncorroborated testimony could not supply the satisfactory and convincing evidence the law requires.

"Conveyances made to members of one's household and to near relatives of an embarrassed debtor are looked upon with suspicion and scrutinized with care; when voluntary they are presumed fraudulent and when the embarrassment of the debtor proceeds to financial wreck such conveyances are conclusively presumed to be fraudulent as to existing creditors. Wilks v. Vaughan, 73 Ark. 174, 83 S.W. 913; Papan v. Nahay, 106 Ark. 230, 152 S.W. 107; Brady v. Irby, 101 Ark. 573, 142 S.W. 1124, Ann.Cas.1913E, 1054; Fluke v. Sharum, 118 Ark. 229, 176 S.W. 684." Kaufman v. Citizens' Bank, 189 Ark. 113, 115, 70 S.W.2d 572, 573. Campbell v. Carlisle, 190 Ark. 1103, 83 S.W.2d 536; Wasson v. Greig, 194 Ark. 420, 108 S.W.2d 463.

The conclusion that the transfer was not fraudulent as against the bonding company which had been compelled to pay off the material men and creditors of the partnership was erroneous.

The deed to Claude B. Hord's son was without consideration and it also was void.

The decree is reversed with direction, to set aside the transfers as fraudulent and to subject the property to the plaintiff's debt as such debt was found by the court.