CRAMPTON *v.* SCHAAP.

Opinion delivered May 21, 1892.

1. *Fraud—Voluntary conveyance.*

Where the grantor in a voluntary conveyance was not insolvent, the fact that he was in debt raises no presumption of fraud as to subsequent creditors.

2. *Voluntary conveyance—Homestead.*

The intention of a vendee, in procuring a conveyance of land to his wife for use as a home, that it should be exempt from his debts does not render the conveyance fraudulent as to subsequent creditors.

Appeal from Sebastian Circuit Court in Chancery, Fort Smith District.

T. C. HUMPHRY, Judge.

John Schaap sued Alice W. Crampton, alleging that, on the 19th of September, 1887, B. S. Seybert was indebted to him and gave his two promissory notes to him, upon which, after allowing credits, there was, at the time of the institution of this suit, due $192.63; that Seybert died in 1888, leaving defendant as his widow, and she was appointed administratrix of his estate, and that, before the expiration of two years after such appointment, on her application, the administration was closed and the assets of the estate, which was wholly insolvent, vested in her absolutely, by order of the probate court, leaving nothing whatever to pay the debts of the estate; that, in February, 1890, the defendant had intermarried with D. C. Crampton; that there was no existing administration of the estate of B. S. Seybert; that, in his lifetime, B. S. Seybert had purchased certain real estate, fully described, consisting of 167 48-100 acres; that he caused the deeds of the same to be made

in the name of defendant, his wife ; that he paid for the same ; that the deed to her was a fraud upon his creditors, and the title in her was colorable only, and she had no interest therein ; that Seybert was largely indebted at the time ; that after the administration closed, defendant sold said lands and has in her possession the proceeds thereof, which plaintiff asked should be applied to the payment of his debt.

An attachment was sued out upon the ground of the non-residence of defendant, and W. R. Martin was summoned as garnishee. The garnishee answered that he had in his possession, belonging to defendant, $222.63.

Defendant filed a general demurrer. Before it was acted upon, the cause was transferred to equity, and the demurrer was overruled. Defendant's answer admitted that she was the widow of B. S. Seybert, and had married D. C. Crampton ; that she had been administratrix of Seybert's estate ; that all of its assets had, on her petition, been vested in her absolutely, and that nothing was left for the creditors of the estate ; that there was no existing administration of the Seybert estate ; admitted the purchase of the lands mentioned in the complaint by Seybert in his lifetime, and that the deeds were in her name, and that she had since sold the same ; alleged that, at the time of the purchase of the land, Seybert was solvent, and that the lands were purchased with money of her own, inherited from her father's estate ; alleged that no debts now exist which Seybert owed at the time of the purchase ; denied that the deeds to her were fraudulent ; and alleged that plaintiff's claim had never been probated against Seybert's estate.

The court found that, prior to the contraction of the debt to plaintiff, Seybert purchased the lands mentioned in the complaint and had the same conveyed to his wife ; that the conveyances to his wife were voluntary and fraudulent, as to antecedent and subsequent creditors,

and made with the purpose of defrauding the subsequent creditors ; that defendant remained in possession of said lands jointly with her husband till his death, and exclusively afterwards until a few days before the bringing of this suit, when she sold the same, and part of the proceeds were arrested in the hands of W. R. Martin, garnishee herein, who holds $222.63 subject to the order of the court, and said sum was in his hands when the garnishment was served, coming to defendant from such sale ; that defendant was a non-resident of the State, and that Seybert was indebted to plaintiff in the sum of $197.   Judgment was that the attachment be sustained, and the garnishee ordered to pay over the sum in his hands, or so much thereof as is necessary to satisfy plaintiff's judgment, and that defendant pay the costs. Defendant has appealed.

*Clendening, Read & Youmans* for appellant.

In order for a subsequent creditor to impeach a conveyance actual fraud must be shown, or that there were pre-existing debts still unpaid.   38 Ark. 427 ; 50 Ark. 42 ; 42 *id.* 173.   The evidence fails to show this.   See also the cases in 16 Ark. 474, and 39 *id.* 111.

*Joseph M. Hill* for appellee.

The appellee in this case proved fraud in fact, and pre-existing debts at the time the voluntary conveyance was made, within the rule.   38 Ark. 422 ; 50 *id.* 42 ; 34 N. Y. 508 ; 42 Ark. 170 ; 33 Ark. 762.   As to when a deed made to repay a debt to a wife is fraudulent, see 11 S. W. Rep. 840 ; 9 S. E. Rep. 175 ; 13 S. W. Rep. 82 ; 9 So. Rep. 228 ; 14 S. W. 837 ; 25 N. E. Rep. 1016 ; 92 U. S. 183 ; 44 Pa. St. 413 ; Wait, Fr. Conv. sec. 100.

MANSFIELD, J.   The conclusion reached in considering this cause, on the evidence adduced, makes it unnecessary to decide the questions presented by the demurrer to the complaint.

1. When
voluntary con-
veyance not
fraudulent.

To avoid a voluntary conveyance, a subsequent creditor must show that it was made with the actual intent to defraud. *Drigg & Co.'s Bank,* v. *Norwood,* 50 Ark. 42. He cannot, like a prior creditor, raise a presumption of such intent by merely showing that the grantor was in debt at the date of the conveyance. A presumption of fraud as to subsequent creditors does arise on proof that the grantor was insolvent. But this presumption is not as to such creditors conclusive. *Rudy* v. *Austin, ante* p. 69. If it be conceded that Seybert, the grantor in the present case, was insolvent at the time of the conveyance to the defendant, the presumption arising as to the intent with which the grant was made is not supported by circumstances such as were held to make it conclusive in the cases cited. It does not appear, as it did in those cases, that, soon after the execution of the deed, the grantor contracted debts which he could not reasonably have expected to pay. Nor is any connection whatever shown between the debts he then owed and that of the plaintiff, which accrued more than nine years after the date of the conveyance. The evidence also fails to show that any part of the indebtedness then existing was paid by contracting other debts, or that the plaintiff is entitled to be subrogated to the right of a prior creditor to avoid the conveyance. *Rudy* v. *Austin, supra;* Bump, Fraudulent Conv. 322. Whether, in the absence of any circumstance similar to either of those mentioned, a presumption resting alone on the insolvency of the grantor will be repelled by the facts urged against it here, is a question we need not decide in this case ; for we think the evidence insufficient to establish Seybert's insolvency. Three witnesses called by the plaintiff gave testimony on the question of his indebtedness. But neither of them states the amount of his debts or facts from which the amount may be estimated. Nor does either of these witnesses make any statement from

which the extent or value of his property may be arrived at. One of them, a merchant, who appears to have had more information as to Seybert's circumstances than either of the others, states that he was "reckless" in trading and "owed everybody from whom he could buy on credit from 1878 to 1887." But the extent to which he obtained credit, or whether this course of trading began before the purchase of the lands conveyed to the defendant, is not shown. The same witness says that Seybert, who was a physician, was the most successful man he knew in his practice and in buying cattle. And his testimony shows that the witness did not cease to credit him until in 1882, which was several years after the purchase of the lands. One of the other witnesses says that, according to statements made to him by Seybert, the latter was largely in debt from 1877 to the time of his death. But what proportion his indebtedness at any time bore to the value of his property, or what part of it was incurred in purchasing the lands referred to, is not shown. The witness, however, states that in 1878 Seybert spoke of his indebtedness for lands, saying he had bought beyond his means. The conveyance complained of was made in May, 1878. Whether any of the lands were purchased at an earlier date does not appear. But it does appear that, at the time of the principal purchase, only the sum of two hundred dollars was paid upon the price. The third of the three witnesses mentioned states that his impression in 1878 was that Seybert's circumstances were tolerably good. But the witness had no certain information as to what his situation was. From all the facts bearing on that question it is fairly to be inferred that Seybert was in debt at the time the lands were purchased. But we think the evidence does not warrant a finding that he was then insolvent. And without proof of insolvency

there is no presumption as to the plaintiff's debt against the validity of the conveyance.

2. When conveyance of land to wife not fraudulent.

But it is said that the actual intention to defraud is proved by a witness who states that Seybert requested his advice as to whether lands conveyed to his wife would be liable for his debts. The witness understood, from the conversation had with him, that he desired to protect the lands from subsequent debts growing out of the " uncertainties of business," and not that he then contemplated contracting debts. We think the intention indicated by this conversation, when it is considered in the light of other facts found in the record, was not fraudulent, and may be reconciled with the purpose simply to settle this property upon the defendant, so that it would be secured to her as a home—not exposed to the hazard of Seybert's business enterprises. And if credit be given to her testimony, Seybert had used money belonging to her equal in amount to the cost of the lands, and the conveyance to her was by way of restoring an inheritance from her father's estate. However that may have been, the lands were improved and occupied as a homestead, and the purchase money was for the most part obtained by a mortgage upon the property executed during the year in which it was bought and only satisfied by a sale which took place a short time before the institution of this suit. The sum which was actually paid on the purchase, from means acquired by Seybert, can not be exactly ascertained from the evidence. But it was probably not larger than a man of his station might reasonably expend in renting a comfortable place of residence, for the period during which he occupied these lands. It is said to be a duty which a man owes to his family to provide for them a home. 2 Jones, Liens, sec. 1263. In the effort made to discharge that duty, it is not apparent that Seybert was guilty of any wrong, even to a prior creditor. And we cannot see that his

conduct furnishes a just ground of complaint to one whose debt had no existence until many years after the purchase. *Edmonson* v. *Meacham*, 50 Miss. 34.

We think the evidence does not justify the finding and decree of the chancellor. The judgment will therefore be reversed, and the complaint dismissed.