### JENKINS *v.* SMITH.

Opinion delivered March 22, 1926.

1. FRAUDULENT CONVEYANCES—INTENT TO DEFRAUD—PRESUMPTION.— In order for a subsequent creditor to secure the avoidance of a voluntary conveyance, the intention to defraud existing or subsequent creditors must be proved by the facts and circumstances surrounding the transaction, and the presumption of such intention will not be indulged from the execution of a voluntary conveyance.

2. FRAUDULENT CONVEYANCES—INTENT TO DEFRAUD—EVIDENCE.—In a suit to set aside a voluntary conveyance as a fraud upon subsequent creditors, evidence *held* not to establish the intention to defraud.

Appeal from White Chancery Court; *John E. Martineau,* Chancellor; reversed.

*J. N. Rachels,* for appellant.

*Brundidge & Neelly,* for appellee.

HUMPHREYS, J. This is an appeal from a decree rendered in the chancery court of White County against appellants setting aside a deed made by J. R. Jenkins on

the 21st day of January, 1922, to 86 acres of land in said county in order to sell same and apply the proceeds thereof and the rents therefrom to the payment of a balance of $969.89 due upon a note executed by J. R. Jenkins and his brother, J. D. Jenkins, upon the ground. that said conveyance was made in fraud of the rights of the creditors of said J. R. Jenkins.

The record discloses that the note in question was executed by J. R. Jenkins and J. D. Jenkins on the 12th day of May, 1922, in settlement of interest which had accumulated upon a $4,000 mortgage on a bottom farm which the Jenkins brothers had made to appellee. This mortgage had been made to appellee some years before, and Belle Jenkins joined her husband in the execution thereof with the understanding that her husband would convey the 86-acre tract in question to her. The 86-acre tract had been purchased with $900, which Belle Jenkins borrowed from her mother, and with the proceeds of land and lots which had been theretofore purchased with money belonging to her. Belle Jenkins and her children were industrious, and made considerable on the farm, and especially out of five acres of strawberries which she and the children had cultivated. Her husband was associated with his brother in several kinds of business, which had not proved profitable. For example, they went into the garage business at one time and incurred an indebtedness of over $5,000. J. R. Jenkins' son took that business over and assumed and paid the indebtedness against it. At the time J. R. Jenkins made a deed to the 86-acre tract of land, he was not involved beyond his ability to pay. The bottom farm upon which he and his brother had executed a mortgage for $4,000 to appellee was worth anywhere from $6,000 to $10,000. They mortgaged that farm to another party for $4,000 with which to pay appellee's mortgage, and, at the time the testimony was taken in this case, they still owned their equity in that farm. When the note sued upon was given in May, 1922, to cover accumulated interest on the $4,000 mortgage, it was understood that J. R. Jenkins would liquidate it out

of the rents from the bottom farm. He did collect and apply one year's rent amounting to $395 on the note.

A garnishment was issued in this proceeding against F. F. Olds, the tenant of Mrs. Belle Jenkins, who answered that he owed rents in the sum of $456, $406 on the 86-acre tract, and $50 on the portion of the bottom farm he cultivated. He only cultivated three acres on the bottom farm.

The court rendered a decree applying the rents reported by F. F. Olds to the payment of the judgment rendered against J. R. Jenkins and J. D. Jenkins on the interest note, and canceled the deed to the 86-acre tract, and ordered a sale of the land, if the balance of the judgment was not paid in ten days, to satisfy same.

The decree canceling the deed and applying the rents to the payment of appellee's judgment was rendered on the theory that the conveyance was voluntary, and made with the intent to defraud subsequent creditors. The debt was not created until about four months after the execution of the deed.

This court has ruled that, in order for a subsequent creditor to secure the avoidance of a voluntary conveyance, the intention to defraud existing or subsequent creditors must be proved by the facts and circumstances surrounding the transaction, and that the presumption will not be indulged from the execution of a voluntary conveyance that he had the intention to defraud future creditors. *Henry Quellmalz Lbr. & Mfg. Co.* v. *Day,* 132 Ark. 469; *Bunch* v. *Empire Cotton Co.,* 158 Ark. 462.

We do not think, under the rules of law thus announced, that the conveyance in the instant case was made with an intent to defraud J. R. Jenkins' creditors. In the first place, we think the equitable owner of the 86-acre tract was Mrs. Belle Jenkins. According to the weight of the evidence, her money was used in the purchase of the land. In addition, the conveyance was made pursuant to a property settlement agreed upon between the parties several years prior to the execution of the deed. In the second place, the circumstances surround-

ing the transaction do not indicate that the deed was made with a fraudulent intent of defrauding existing or future creditors. There were no known existing creditors of J. R. Jenkins at the time he made the conveyance. It is true he testified that he had nothing at the time he made the conveyance, from which it might be inferred that he was insolvent, but the undisputed evidence reveals that he was not insolvent. He must have meant by his statement that he had nothing left after making the conveyance except an equity in the bottom farm. He and his brother owned the bottom farm at that time, and, when the testimony was taken in this case, they still owned it. At the time the Jenkins brothers executed the note sued upon to appellee, there was an understanding that J. R. Jenkins should collect the rents from the bottom farm, and apply them upon the note. He subsequently collected $395 in rents from said farm and paid that amount to appellee upon the interest note.

Under our interpretation of the evidence, the chancellor erred in setting aside the deed and applying the rents upon the 86-acre tract to the payment of the judgment in favor of appellee.

The decree is therefore reversed in these particulars, and remanded with directions to enter a decree in accordance with this opinion.