4-5806                                           137 S. W. 2d 744

Opinion delivered March 4, 1940.

*C. A. Holland,* for appellant.
*W. F. Reeves,* for appellee.

HUMPHREYS, J.   N. L. Ramsey, one of the appellants in this case, together with his brother, Lee Ramsey, executed a note in 1920 to appellee for $290 in consideration of appellee's one-ninth interest in Texas lands which appellee and his brothers and sisters had inherited from their father.   In addition to the one-ninth interest N. L. Ramsey purchased from appellee, he also purchased the interest of four other heirs.   His wife owned a one-sixth interest in the Texas lands and her interest together with that N. L. Ramsey had purchased gave them jointly a six-ninths interest therein.   All the heirs sold the Texas lands for $7,500 out of which $5,000 was received by N. L. Ramsey and his wife, Mary Ramsey, as their portion of the proceeds of the sale.   A part of this money was used in the purchase of the SE¼ of the NE¼ and the NE¼ of the SE¼ of section 6, township

13 north, range 12 west and the S½ of the NW¼ of the NW¼ and the S½ of the NE¼ of the NE¼ of the NW¼ and the NE¼ of the NE¼ of the NW¼ of section 8, township 13 north, range 12 west in Stone county, Arkansas, containing in all 130 acres, more or less, and the deed was taken in the name of N. L. Ramsey. Interest was paid annually on the note beginning in 1921 up to and including the year 1933. Nothing was paid on the note after that date, and in the spring of 1935 appellee turned the note over to his attorney for collection. On September 10, 1935, N. L. Ramsey conveyed said real estate to his wife, Mary Ramsey, for the consideration of love and affection and caused said deed to be recorded in deed record Book 1, at page 188 of the records of Stone county, Arkansas. Suit was brought on the note in the circuit court of said county and judgment was taken against N. L. Ramsey and L. B. Ramsey, his brother, on November 15, 1937, in the sum of $408.36 and costs which was to draw interest at the rate of 10 per cent. per annum from that date until paid.

On January 22, 1938, an execution was issued out of the circuit court on said judgment upon which a *nulla bona* return was made by the sheriff.

This suit was then brought in the chancery court of Stone county to set aside the deed of said land from N. L. Ramsey to Mary Ramsey, his wife, on the ground that it was without consideration and fraudulently made to prevent appellee from collecting the note which N. L. Ramsey and his brother had made to him in 1920 for his one-ninth interest in the Texas lands.

Appellants filed answers denying that the conveyance was without consideration and made with the fraudulent intent of preventing appellee from collecting said note.

The cause was submitted to the court upon the pleadings and testimony introduced by the respective parties resulting in a finding that the purpose of the deed was to defraud appellee in the collection of his note and a decree canceling the deed and subjecting the

land to public sale to pay said judgment, from which finding and decree is this appeal.

The testimony reflects that the land in Stone county was paid for out of the fund received from the sale of the Texas lands and that five-sixths of the amount received belonged to N. L. Ramsey, and that the deed was taken in the name of N. L. Ramsey and so held by him for a number of years without objection on the part of Mary Ramsey, his wife, or without any claim being made to all or any part of it by Mary Ramsey. In fact, the title remained in him until appellee turned the note over to a lawyer for collection and that within a few months thereafter, N. L. Ramsey conveyed all the land to Mary Ramsey, his wife, the recited consideration being love and affection. The testimony reflects that N. L. Ramsey made a gift of practically all of his personal property to his son. It is argued that, because one-ninth of the money received from the sale of the Texas lands belonged to Mary Ramsey and that these sums were used in the purchase of the Arkansas lands N. L. Ramsey held the title in the Arkansas lands in trust for her, and that the Arkansas lands really belonged to her. There is no testimony in the record showing that any such agreement existed between N. L. Ramsey and his wife at the time he purchased the Arkansas lands. He purchased and paid for the Arkansas lands and took the deed to himself and retained the title thereto in himself until the note he owed appellee was turned over to an attorney for collection, then it was he conveyed all the land to his wife for love and affection and gave the major portion of his personal property to his son. The testimony also reflects that out of the $5,000 received from the Texas lands Mary Ramsey made a personal loan of $2,000 to a bank. The $2,000 she loaned to the bank was more than one-sixth of the money she and N. L. Ramsey received from the sale of their interest in the Texas lands. If N. L. Ramsey borrowed any of Mary Ramsey's money in buying the Arkansas lands and took the deed in his own name as trustee for her the natural thing to have done when he conveyed the land to Mary

Ramsey was to recite the true consideration therein and not convey it to her for love and affection. We think there is no merit in appellant's claim that the Arkansas lands were bought with Mary Ramsey's money.

Appellants also contend that the testimony fails to show that the conveyance of the Arkansas land by N. L. Ramsey to Mary Ramsey and a gift of personal property to his son rendered him insolvent or execution proof at the time he made the gifts. It is true both N. L. Ramsey and Mary Ramsey testified that in 1935 after making the conveyances N. L. Ramsey was solvent. Yet they admitted that all he had left after making the conveyances was a little stock of goods not to exceed in value at any time more than $100. After appellee obtained judgment on the note in 1937 execution was issued thereon and no property was found by the sheriff belonging to N. L. Ramsey upon which to levy the execution. We think the conveyances or gifts rendered N. L. Ramsey insolvent at the time he made them and that he continued in that condition from and after that time until the trial of this suit. The law applicable to cases of this character was announced in the recent case of *Eveland* v. *State, use Birdie Fossett, ante* p. 366, 133 S. W. 2d 643, as follows:

"The rule is well settled that conveyances by debtors to members of their households or to near relatives are looked upon with suspicion and scrutinized with care, and when the embarrassment proceeds to insolvency, they are conclusively presumed to be fraudulent as to existing creditors."

Every element necessary to apply this rule appears in the record of this case.

No error appearing, the decree is affirmed.