**SIEB'S HATCHERIES, Inc. v. LIND-LEY et al.**

**Civ. A. No. 1026.**

United States District Court
W. D. Arkansas, Fort Smith Division.

April 14, 1953.

James R. Hale, Fayetteville, Ark., for plaintiff.

Rex W. Perkins, Fayetteville, Ark., for defendants.

JOHN E. MILLER, District Judge.

On June 14, 1952, plaintiff filed its complaint against defendants to recover $8,-148.67, with interest thereon from September 5, 1950, at the rate of six per cent per annum, and to set aside as fraudulent certain conveyances of real property and transfers of notes and mortgages specifically described in the complaint.

On June 27, 1952, the defendants, Lester Lindley, F. M. Lindley, Willie Lindley and Sherman Madden, filed their answer denying the allegations of the complaint. On July 16, 1952, the plaintiff filed and served a demand for admission of facts. On July 23, 1952, the defendants, Lester Lindley, F. M. Lindley, Willie Lindley and Sherman Madden, filed their response to the demand for admission of facts. The response was not verified as required by Rule 36, Federal Rules of Civil Procedure, 28 U.S.C.A.

On July 24, 1952, the defendants, Jack Sharpensteen and Lucille Sharpensteen, filed their response to the demand for admission of facts. Likewise, their response was not verified. Also, on the same date, they filed a motion to require plaintiff to make its complaint more definite and certain.

On July 26, 1952, the plaintiff filed a motion for summary judgment against the defendants, Lester Lindley, F. M. Lindley and Sherman Madden.

A pre-trial conference was held on July 28, 1952, and on that date an order was entered requiring the plaintiff to make its complaint more definite and certain and directing it to more fully describe the property it claims was transferred illegally and to which defendant it was transferred.

Also, on the same date, the court ordered the parties to brief the question of liability of the defendants, Lester Lindley, F. M. Lindley and Sherman Madden, on the response filed by said defendants to the request for admission of facts.

On August 6, 1952, the plaintiff filed an amendment to its complaint in conformity with the order of the court of July 28, 1952.

On August 9, 1952, the plaintiff filed its brief in support of the motion for summary judgment against the defendants, Lester Lindley, F. M. Lindley and Sherman Madden. After plaintiff had served and filed its brief, the said defendants filed a motion to amend their response to demand for admission of facts.

On August 23, 1952, the defendants, Jack Sharpensteen and Lucille Sharpensteen, filed their answer to the amended complaint.

On September 4, 1952, the defendants, Lester Lindley, F. M. Lindley, Willie Lindley and Sherman Madden, filed an amendment to their motion to amend their response to the demand for admission of facts and on September 9, 1952, the plaintiff filed its response to the amendment of the motion of said defendants and asked that their motion to amend the response be denied. The question of whether the defendants should be allowed to amend their response to the request for admission of facts and the proposed amendment thereto was considered by the court and on September 30, 1952, the court rendered its opinion thereon and in accordance therewith the motion and the amended motion of defendants, Lester Lindley, F. M. Lindley and Sherman Madden, were denied, and the defendants were directed to file and serve briefs in opposition to the motion of plaintiff for summary judgment. See, Sieb's Hatcheries, Inc., v. Lindley, D.C.W. D.Ark., 13 F.R.D. 113.

Following the filing of the opinion and the entry of the order in accordance therewith, the defendants filed their brief in opposition to the plaintiff's motion for summary judgment, and the court then considered the motion and briefs filed by the respective parties and, on November 25, 1952, filed its opinion sustaining the motion for summary judgment against defendants, Lester Lindley and F. M. Lindley, and directed that the plaintiff make proof of the amount due it on a judgment obtained in this court against Ozark Poultry & Egg,

Inc., on January 16, 1952. See, Sieb's Hatcheries, Inc., v. Lindley, D.C.W.D. Ark., 108 F.Supp. 415. The plaintiff made such proof and, on December 8, 1952, judgment was rendered herein against the defendants, Lester Lindley and F. M. Lindley, for the sum of $8,415.70, with interest thereon at the rate of six per cent per annum.

On the same date, the complaint of plaintiff against defendants, Jack Sharpensteen and Lucille Sharpensteen, was dismissed.

On March 25, 1953, the cause came on for hearing on the complaint of the plaintiff seeking to set aside certain conveyances of real property and transfers of notes and mortgages alleged to have been fraudulently made by the defendant, F. M. Lindley, to the defendant, Willie Lindley, and also certain conveyances to the defendant, Sherman Madden. At the conclusion of the trial, the court orally stated its tentative findings of fact on certain issues and directed the respective parties to file briefs on the questions of law raised by the testimony introduced at the hearing. The briefs of the parties have been received and considered along with the ore tenus and documentary testimony, and the court now makes and files herein its findings of fact and conclusions of law, separately stated.

### Findings of Fact

#### No. 1

The plaintiff is a corporation organized and existing under the laws of the State of Illinois with its principal place of business at Lincoln, Illinois. The defendants, Lester Lindley, F. M. Lindley, Willie Lindley and Sherman Madden, are citizens of Arkansas and reside within the Western District thereof. The amount involved herein exceeds $3,000 exclusive of interest and costs.

#### No. 2

On January 16, 1952, the plaintiff obtained a judgment in this court in Civil Action No. 991 against Ozark Poultry & Egg, Inc., for the sum of $8,148.67, with interest thereon from September 5, 1950. (Plaintiff's Exhibit No. 8.)

### No. 3

On December 8, 1952, plaintiff obtained judgment in the instant case against the defendants, Lester Lindley and F. M. Lindley, for the sum of $8,415.70, with interest thereon at the rate of six per cent per annum. (Plaintiff's Exhibit No. 9.)

### No. 4

On August 10, 1935, Emma P. Cowper conveyed to the defendant, F. M. Lindley, for a stated consideration of $450 certain real property in the City of Springdale, Arkansas, being a part of the east half of Block 5 in the Railroad Addition to the said city, and more particularly described as "beginning at a point 87 feet south of the northeast corner of said block and running thence west 94½ feet to an alley; thence south 87 feet; thence east 94½ feet to the east line of said block, and thence north 87 feet to the place of beginning." This deed was duly recorded on September 13, 1935, and this property has been occupied by the defendant, F. M. Lindley, and Mrs. Willie Lindley, who is his wife, since the date of the deed or for approximately twenty-eight years and is now so occupied. (Plaintiff's Exhibit No. 2.)

### No. 5

On February 21, 1928, J. W. Arnold and wife conveyed to the defendants, F. M. Lindley and Willie Lindley, "husband and wife," a part of the east half of Block 5 in the Railroad Addition to the City of Springdale, Arkansas, specifically described as follows:

"Beginning at the northeast corner of said block and running thence south 87 feet; thence west 94½ feet to the east line of a 20-foot alley; thence north 87 feet to the north line of said block; thence east 94½ feet to the place of beginning, being 87 feet squarely off of the north end of Lot 1 in Block 5 in said addition."

This deed was duly recorded on March 5, 1928, and discloses a consideration of $2,900.

This particular property is rental property and is occupied by the Ozark Motor Company, which pays a rental to Mrs. Willie Lindley of approximately $145 per month. (Plaintiff's Exhibit No. 3.)

### No. 6

On February 2, 1952, the defendant, F. M. Lindley, conveyed the property described in Findings of Fact Nos. 4 and 5 to the defendant, Willie Lindley, by warranty deed which was duly recorded on April 23, 1952. The conveyance was made subject to a certain real estate mortgage held by the First State Bank of Springdale, Arkansas, for the principal sum of $6,500 on the north 87 feet of Lot 1 in Block 5 or the part now occupied by the Ozark Motor Company. (Plaintiff's Exhibit No. 1.)

### No. 7

On March 1, 1951, the Ozark Poultry & Egg, Inc., executed and delivered to the defendant, F. M. Lindley, a mortgage on the real property owned by said corporation, being described as follows:

"Part of the SE¼ of the NE¼ of Section 35, Township 18 North, Range 30 West, described as beginning 60 rods North of the SW corner of the said 40-acre tract and running thence east 300 feet, thence north 140 feet, thence west 300 feet, thence south 140 feet to the place of beginning."

This mortgage was executed to secure the payment of an indebtedness that the corporation owed F. M. Lindley in the sum of $3,400, evidenced by a promissory note, with interest thereon at six per cent per annum, and was duly recorded March 2, 1951. (Plaintiff's Exhibit No. 4.)

### No. 8

On and prior to February 20, 1952, the defendants, F. M. Lindley and wife, Willie Lindley, were the owners as tenants by the entirety of a certain large farm in Washington County, Arkansas, and on that date sold the farm to Carroll L. Talbot and wife for a consideration of approximately $32,500, subject, however, to a mortgage in the sum of $4,678.09 in favor of the National Equity Life Insurance Company of Little Rock, Arkansas. The net consideration for this conveyance was paid to the defendants, F. M. Lindley and wife, Willie Lindley, as

tenants by the entirety. (Plaintiff's Exhibit No. 5.)

## No. 9

On August 8, 1951, Southwest Lime Company filed a suit in the United States District Court, Western District of Arkansas, Fayetteville Division, against the defendants herein, Lester Lindley and F. M. Lindley, and Ozark Poultry & Egg, Inc., and Claudine Lindley, the divorced wife of the defendant, Lester Lindley. The plaintiff sought to recover in that action the sum of $10,000, evidenced by a promissory note executed by Ozark Poultry & Egg, Inc., on May 26, 1950, and to foreclose a mortgage securing the payment of said note, which mortgage was executed by said corporation and covered the real property of the corporation which is described in Finding of Fact No. 7.

Also, plaintiff sought to recover on a promissory note in the sum of $3,000 executed by the defendant herein, Lester Lindley, and his divorced wife, Claudine Lindley.

The plaintiff further sought judgment against the incorporators of Ozark Poultry & Egg, Inc., Lester Lindley, Claudine Lindley and F. M. Lindley, on the ground that they organized the corporation and proceeded to engage in business prior to paying in the said corporation the certified capital of $50,000.

The trial of this cause began in the Fayetteville Division on June 2, 1952, and during the trial the plaintiff and the defendants reached an agreement of settlement, by the terms of which the defendants were to pay the plaintiff the principal and interest on the $10,000 note and, in accordance with the settlement, it was provided in the judgment, inter alia:

"And it appearing that the said sum of money hereinabove mentioned has been paid by the defendant, F. M. Lindley, this judgment is satisfied in full.

"It is directed that a certified copy of this decree shall be evidence of the transfer of the notes and mortgage and the accounts and claims hereinbefore mentioned to F. M. Lindley without recourse."

In other words, the defendant, F. M. Lindley, settled the claim of the Southwest Lime Company for $10,000 and interest thereon according to the terms of the note and took an assignment from the Southwest Lime Company of all of its claims against the Ozark Poultry & Egg, Inc., on the $10,000 note, a $3,000 note and an open account. (Plaintiff's Exhibit No. 6.)

## No. 10

On July 9, 1951, the Illinois Central Railroad Company, a corporation, obtained a judgment in the Circuit Court of Washington County, Arkansas, against Ozark Poultry & Egg, Inc., for $795.22, and in the same suit the Ozark Poultry & Egg, Inc., obtained a judgment against the Mutual Fire & Automobile Insurance Company of Dallas, Texas, for said sum. (Plaintiff's Exhibit No. 7.)

## No. 11

On July 28, 1952, the plaintiff herein filed its notice lis pendens in the office of the Circuit Clerk and Recorder of Washington County, Arkansas. (Plaintiff's Exhibit No. 10.)

Also, the plaintiff, on February 9, 1953, filed a notice lis pendens in the same office reciting that it had obtained a judgment against defendants, Lester Lindley and F. M. Lindley, for the sum of $8,415.70 on December 8, 1952, and that it was seeking to subject all property formerly owned by the defendant, F. M. Lindley, to the payment of said judgment. (Plaintiff's Exhibits Nos. 10 and 11.)

## No. 12

On August 1, 1952, plaintiff filed a notice lis pendens in the office of the Circuit Clerk and Ex-Officio Recorder of Deeds of McDonald County, Missouri, giving notice of the filing of this suit for judgment against F. M. Lindley and to subject to the judgment when and if obtained certain real property situated in McDonald County, Missouri. (Plaintiff's Exhibit No. 12.)

## No. 13

The defendants, F. M. Lindley and Mrs. Willie Lindley, are husband and wife and have been for approximately forty-seven years. At the time of their marriage they

owned no property, and have worked together since that time with the result that they accumulated through their joint efforts property of considerable value, consisting of the farm which they owned as tenants by the entirety and which they conveyed to Mr. and Mrs. Talbot on February 20, 1952 (Plaintiff's Exhibit No. 5), the property which they purchased as tenants by the entirety from J. W. Arnold and wife on February 21, 1928, and which at the time of the trial was rented and occupied by the Ozark Motor Company (Plaintiff's Exhibit No. 3); also their homestead that they acquired August 10, 1935. (Plaintiff's Exhibit No. 2.)

They have had for years a joint bank account and the defendant, F. M. Lindley, as a husband, has transacted most if not all of the business for himself and wife.

The defendant, Lester Lindley, is their son, and he and his former wife, Claudine Lindley, owned Ozark Poultry & Egg Company, which was a partnership until the said Claudine Lindley and the defendants, Lester Lindley and F. M. Lindley, filed in the office of the County Clerk of Washington County, Arkansas, on December 19, 1949, articles of incorporation of Ozark Poultry & Egg, Inc. Soon after this corporation was organized, Claudine Lindley and the defendant, Lester Lindley, separated and a divorce was granted. Claudine Lindley left the state and it soon became necessary that the corporation obtain some money with which to pay overdrafts in its bank account. The defendant, Lester Lindley, appealed to his father, F. M. Lindley, for help and the defendant, F. M. Lindley, advanced to the corporation $3,400 to cover the overdrafts, and the mortgage dated March 1, 1951, and recorded March 2, 1951 (Plaintiff's Exhibit No. 4), was executed to F. M. Lindley to secure the payment of the note for $3,400 and interest.

The judgment obtained by Illinois Central Railroad Company against the corporation on July 9, 1951, in the Washington Circuit Court (Plaintiff's Exhibit No. 7), was paid by F. M. Lindley as the agent of defendant, Mrs. Willie Lindley, and with her own money. The judgment was assigned to F. M. Lindley by the Railroad Company and in turn assigned by him to Mrs. Willie Lindley.

## No. 14

During the year 1950, the defendant, Lester Lindley, and the Ozark Poultry & Egg, Inc., entered into a contract with Denver Matthews and wife to purchase a small tract of land in McDonald County, Missouri. The corporation and the defendant, Lester Lindley, were unable to meet the terms of the contract of purchase and the same was assigned by Lester Lindley to the defendant, Sherman Madden, who assumed the contract and obtained a conveyance from Mr. and Mrs. Matthews on February 21, 1951. Later, the defendant, Madden, became unable to continue payments on the mortgage on the land and he conveyed the land to the defendant, Mrs. Willie Lindley, on March 27, 1952. Mrs. Lindley paid $2,500, which was the amount due under a mortgage held by Hollis Turner. Mrs. Lindley negotiated the purchase from Sherman Madden and was present in Missouri when the purchase was concluded, although her husband attended to the details of the transaction. (See certified copy of deeds attached to Plaintiff's Exhibit No. 12.)

## No. 15

The suit filed by the Southwest Lime Company and heretofore referred to in Finding of Fact No. 9 was filed on August 8, 1951, primarily against Ozark Poultry & Egg, Inc., to collect an account and to foreclose the mortgage, but Lester Lindley and F. M. Lindley were made parties defendant, along with Claudine Lindley, and liability was asserted against the individuals because of their failure to comply with Section 64-607, Arkansas Statutes 1947, Annotated, in the organization of Ozark Poultry & Egg, Inc. This is the only suit that was pending against the defendant, F. M. Lindley, prior to the filing of the instant suit on June 14, 1952. In the meantime, the defendant, F. M. Lindley, and his wife, Mrs. Willie Lindley, had contracted to sell their large farm heretofore referred to (Plaintiff's Exhibit No. 5), and that sale was consummated on February 20, 1952, and the balance of the

purchase price for the sale of the farm was paid about that time. When the contract for that sale was entered into, Mrs. Lindley demanded a division of ·property between her and her husband, the defendant, F. M. Lindley, and, accordingly, the deed (Plaintiff's Exhibit No. 1) was executed and delivered on February 2, 1952, and recorded April 23, 1952. About that time the mortgage for $3,400 (Plaintiff's Exhibit No. 4) and the judgment in favor of the Illinois Central Railroad Company (Plaintiff's Exhibit No. 7) were assigned in writing to the defendant, Mrs. Willie Lindley, by the defendant, F. M. Lindley.

When the Southwest Lime Company lawsuit was compromised and settled, the amount of the settlement was delivered to the plaintiff, Southwest Lime Company, by F. M. Lindley as agent for Mrs. Lindley on June 3, 1952, and F. M. Lindley and Mrs. Willie Lindley both testified that the money was furnished by Mrs. Lindley from her part of the sale price of the farm which they had sold to Talbot. The note for the principal sum of $10,000 and the mortgage held by the Southwest Lime Company were assigned in writing to Mrs. Lindley by F. M. Lindley, to whom it had been assigned by the Southwest Lime Company at the time the settlement was made.

The judgment in favor of the Illinois Central Railroad Company and the $3,400 mortgage were assigned about the same time Mr. and Mrs. Lindley had contracted to sell their large farm, which was sometime in January, 1952. The mortgage held by the Southwest Lime Company was assigned to Mrs. Lindley either the day or immediately after it had been assigned to the defendant, F. M. Lindley, on June 3, 1952.

### No. 16

The plaintiff is attacking the following transactions:

(1) The transfer by the defendant, F. M. Lindley, to the defendant, Mrs. Willie Lindley, of the judgment in favor of the Illinois Central Railroad Company against the Ozark Poultry & Egg, Inc.

(2) The transfer by the defendant, F. M. Lindley, to the defendant, Mrs. Willie Lind-

ley, of the note and mortgage for $3,400 that had been executed by the Ozark Poultry & Egg, Inc., to F. M. Lindley.

(3) The transfer by the defendant, F. M. Lindley, to the defendant, Mrs. Willie Lindley, of the note and mortgage for the principal sum of $10,000 executed by Ozark Poultry & Egg, Inc., to the Southwest Lime Company.

(4) The deed executed by Sherman Madden and wife to the defendant, Mrs. Willie Lindley, conveying to her a small tract of land in McDonald County, Missouri.

(5) The deed executed by the defendant, F. M. Lindley, to the defendant, Mrs. Willie Lindley, on February 2, 1952, in which he conveyed to her his interest in the homestead and one other parcel of real property in Springdale, Arkansas.

All of these transactions occurred prior to the filing on June 14, 1952, of the instant suit which resulted in a summary judgment against the defendants, Lester Lindley and F. M. Lindley, on December 8, 1952.

The testimony does not show that the defendant, F. M. Lindley, had any outstanding obligations at the time of the transactions above set forth except the contingent liability to the plaintiff. The entire history of the judgment in favor of plaintiff in the instant case against the defendants, Lester Lindley and F. M. Lindley, appears in Sieb's Hatcheries, Inc. v. Lindley, D.C.Ark., 108 F.Supp. 415. This judgment is based upon a statute of Arkansas of which few, if any, laymen, including the defendants, had any knowledge.

### No. 17

There was introduced in evidence a duplicate deposit ticket issued by the First State Bank, Springdale, Arkansas, dated March 12, 1952, for $17,821.09, showing a deposit in the bank on that date in the name of "F. M. Lindley and/or Willie Lindley." Mrs. Lindley testified that this represented her interest in the farm that was owned by her and F. M. Lindley as tenants by the entirety and which had been sold by them to Mr. Talbot. From this deposit the money was obtained with which the Southwest Lime Company lawsuit was settled on June 3, 1952, and the McDonald County, Mis-

souri, land purchased by the defendant, Mrs. Willie Lindley, on March 27, 1952.

### No. 18

The defendant, Lester Lindley, owns no property and the only property that is owned by the Ozark Poultry & Egg, Inc., is the real property described in Plaintiff's Exhibit No. 4 and upon which the Southwest Lime Company obtained its mortgage on May 26, 1950, which was recorded on June 14, 1950, and upon which the defendant, F. M. Lindley, obtained a mortgage for $3,400 on March 1, 1951. Thus the judgment in favor of the Illinois Central Railroad Company obtained July 9, 1951, and these two mortgages are prior in point of time to the judgment originally obtained by the plaintiff herein against the Ozark Poultry & Egg, Inc., on January 16, 1952. There is no proof of the present value of the real property owned by the corporation, but the court assumes that the judgment obtained by plaintiff against the Ozark Poultry & Egg, Inc., could not be collected from the property owned by the corporation because of the prior liens as above enumerated.

### No. 19

The defendant, F. M. Lindley, was not insolvent at the time the transactions herein attacked occurred, but is now insolvent since the rendition of the judgment herein against him.

During the time his son, the defendant, Lester Lindley, and Lester's now divorced wife, Claudine Lindley, were engaged in business as partners under the name of Ozark Poultry & Egg Company, he rendered them assistance in the operation of the business, but owned no interest therein. When the partnership attempted to convert its business into a corporation and undertook to incorporate Ozark Poultry & Egg, Inc., three incorporators were required and the defendant, F. M. Lindley, subscribed for one share of stock of the par value of $100 and became an officer in the corporation and served in such capacity for approximately one month. Soon after the corporation began to do business, domestic trouble between the defendant, Lester Lindley, and his wife, Claudine

Lindley, culminated in a divorce. Claudine Lindley left the State and was adjudicated a bankrupt. The defendant, F. M. Lindley, continued to try to help his son, Lester Lindley, salvage the business. He expended several thousand dollars in that effort. The dealings of the plaintiff were with the Ozark Poultry & Egg, Inc., and the ultimate liability of the defendant, F. M. Lindley, to the plaintiff was only discovered subsequent to the obtaining of the judgment on January 16, 1952, by plaintiff against Ozark Poultry & Egg, Inc. In extending credit to the corporation, neither the plaintiff nor anyone else knew of or relied upon the personal liability of the defendant, F. M. Lindley.

### No. 20

Mr. Lee Broadhurst was introduced as a witness by the plaintiff in an effort to establish the present market value of the parcel of land now occupied by the Ozark Motor Company (Plaintiff's Exhibit No. 3), and that witness testified that, in his opinion, the property was worth approximately $30,000, subject, of course, to the mortgage held by the First State Bank of Springdale, Arkansas. The testimony of Mr. Broadhurst did not impress the court because of his lack of knowledge of the market value of property in Springdale, Arkansas. The witness is a real estate agent and formerly lived at Fayetteville, but is now residing in Oklahoma. His testimony did not show that degree of knowledge which would justify the court in finding that the value of the property was as testified to by him. And the same is true of the testimony of the witness, B. J. Hainbach. Taking into consideration the location, size, type of construction and rental of the property, common sense and business judgment would fix the value at a sum not in excess of $17,500.

### No. 21

The defendant, Mrs. Willie Lindley, in obtaining a transfer of the Illinois Central Railroad Company judgment, the two mortgages, and the deed to the property in Springdale, Arkansas, and in purchasing the Denver Matthews tract of land in Missouri, did not intend to perpetrate any fraud

upon the creditors of her husband, F. M. Lindley. There is no doubt but that she paid from her own funds face value for the Southwest Lime Company mortgage, the Illinois Central Railroad Company judgment and the Denver Matthews land in McDonald County, Missouri. The property in Springdale that was conveyed to her on February 2, 1952, consisted of the homestead and the other property now occupied by the Ozark Motor Company, the latter being owned by her and her husband, F. M. Lindley, as tenants by the entirety.

The defendant, Mrs. Willie Lindley, over a long period of years had saved some money from her individual work, the exact amount of which is not shown by the testimony, but she did receive from the sale to Talbot of her interest in the large farm approximately $12,500.

### Discussion

The jurisdiction of the Court is based upon diversity of citizenship of the parties and the amount involved. Therefore, the applicable law is that of Arkansas.

A great many cases involving alleged fraudulent conveyances of both personal and real property have been before the Arkansas Supreme Court. The principles of law are singularly uniform and consistent, and in such cases the application of the law to the facts presents the only difficulty.

In Brady v. Irby, 101 Ark. 573, at page 578, 142 S.W. 1124, at page 1125, the Court said:

"This court said, in the case of Rudy v. Austin, 56 Ark. 73, 19 S.W. 111, 35 Am.St.Rep. 85: 'The law requires every man to be just before he is generous. If he makes a voluntary conveyance while he is in debt, it presumes that it is fraudulent as to existing creditors, and the burden is on those claiming under the conveyance to repel the presumption. If he be insolvent and unable to pay his debts, the presumption that it is fraudulent as to antecedent creditors is conclusive.' And in that case there is also quoted this rule announced in the case of Driggs [& Co.'s Bank] v. Norwood, 50 Ark. [42]

46, 6 S.W. [323] 324, 7 Am.St.Rep. 78: 'Every voluntary alienation of his property by an embarrassed debtor is presumptively fraudulent against existing creditors. Indebtedness raises a presumption of fraud, which becomes conclusive upon insolvency.'"

In the same case the Court at page 579 of 101 Ark., at page 1126 of 142 S.W., quoted from the case of Wilks v. Vaughan, 73 Ark. 174, 83 S.W. 913, as follows:

"Conveyances made to members of the household, and to near relatives of an embarrassed debtor, are looked upon with suspicion and scrutinized with care; when voluntary, they are prima facie fraudulent; and when the embarrassment of the debtor proceeds to financial wreck they are presumed conclusively to be fraudulent as to existing creditors."

See also, American Bonding Co. of Baltimore v. Hord, 8 Cir., 98 F.2d 350, 355.

Section 68–1302, Arkansas Statutes 1947, Annotated, provides:

"Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, or in goods and chattels, or things in action * * * and every bond, suit, judgment, decree or execution, made or contrived *with the intent to hinder, delay or defraud creditors* or other persons of their lawful actions, damages, forfeitures, debts or demands, as against creditors and purchasers prior and subsequent, shall be void."

The Court in Evans v. Cheatham, 183 Ark. 82, at page 85, 34 S.W.2d 1076, at page 1077, in commenting on the statute, approved the rule that was announced in 12 R.C.L. 537, as follows:

"While the general rule is that a fraudulent intent on the part of the grantor is necessary to bring conveyances within the terms of the statutes, it is well settled that fraud may arise as an inference of law, and that, when a conveyance is made under such circumstances that the result must necessarily be to hinder and delay creditors,

it will be presumed that such was the intent of the transferor in making it."

The plaintiff contends that at the time the conveyances attacked herein were made, it was an existing creditor of the defendant, F. M. Lindley, and that the above rules of law should be applied to the facts in this case. On the other hand, the defendants contend that at the time the conveyances and assignments attacked herein were made, the plaintiff was not a creditor of the defendant, F. M. Lindley, and that it became a creditor only when it obtained a judgment against him on December 8, 1952, and that the following rules of law are applicable to the facts.

In Jenkins v. Smith, 170 Ark. 806, at page 808, 281 S.W. 377, the Court said:

"This court has ruled that, in order for a subsequent creditor to secure the avoidance of a voluntary conveyance, the intention to defraud existing or subsequent creditors must be proved by the facts and circumstances surrounding the transaction, and that the presumption will not be indulged from the execution of a voluntary conveyance that he had the intention to defraud future creditors. Henry Quellmalz Lbr. & Mfg. Co. v. Day, 132 Ark. 469, 201 S.W. 125; Bunch v. Empire Cotton Co., 158 Ark. 462, 250 S.W. 530."

In Crampton v. Schaap, 56 Ark. 253, at page 256, 19 S.W. 669, at page 670, the Court said:

"To avoid a voluntary conveyance, a subsequent creditor must show that it was made with the actual intent to defraud. Drigg & Co.'s Bank v. Norwood, 50 Ark. 42, 6 S.W. 323. He cannot, like a prior creditor, raise a presumption of such intent by merely showing that the grantor was in debt at the date of the conveyance. A presumption of fraud as to subsequent creditors does arise on proof that the grantor was insolvent. But this presumption is not, as to such creditors, conclusive. Rudy v. Austin, [56 Ark. 73] 19 S.W. 111."

The above statement in Crampton v. Schaap, supra, was approved in Miles v.

Monroe, 96 Ark. 531, at page 538, 132 S.W. 643.

In Renn v. Renn, 207 Ark. 147, at page 153, 179 S.W.2d 657, at page 661, the Court said:

"A voluntary conveyance by an insolvent debtor is fraudulent as to a subsequent creditor if the debtor reasonably had in contemplation the contracting of such future debt at the time the conveyance was made."

In Chronister v. Jernigan, 196 Ark. 615, at page 617, 119 S.W.2d 538, at page 539, the Court, quoting from Home Life & Accident Co. v. Schichtl, 172 Ark. 31, 287 S.W. 769, said:

"The line as to the presumption of fraud is thus clearly drawn between attacks by prior existing creditors and subsequent creditors. The statute [hereinbefore quoted] protects creditors of both classes, but there is a distinction as to the presumption in the rules of evidence in the two classes of cases. As to subsequent creditors, there is no presumption and the burden of proof as to fraud rests upon the attacking creditor, whilst in the case of existing creditors there is a presumption of fraud arising from a voluntary conveyance by the insolvent debtor."

See also, Comment, 2 Ark.Law Review 197.

In the same case at page 619 of 196 Ark., at page 538 of 119 S.W.2d, the Court held that the facts and circumstances surrounding the execution of deeds must be determined as of the date the deeds were filed for record and not on the date they were executed.

Was the plaintiff, at the time the questioned transactions occurred, a prior existing creditor or a subsequent creditor of the defendant, F. M. Lindley?

His liability to the plaintiff was based upon Section 64-607, Arkansas Statutes 1947, Annotated, which provides:

"No corporation shall commence business until the amount of capital specified in its articles of incorporation as the amount of capital with which

it will commence business has been paid in. If any corporation shall violate this provision, its directors and stockholders shall be personally liable for the debts of the corporation * * *."

■ Inasmuch as Ozark Poultry & Egg, Inc., commenced business before the specified amount of capital was paid in, see, Sieb's Hatcheries Inc. v. Lindley, D.C., 108 F.Supp. 415, F. M. Lindley, as a stockholder and officer, became liable personally for the debts of the corporation as and when those debts accrued. The debts owing to the plaintiff herein by Ozark Poultry & Egg, Inc., and by F. M. Lindley as a result of his statutory liability, had accrued prior to the time plaintiff obtained its judgment against Ozark Poultry & Egg, Inc., on January 16, 1952, and its judgment in the instant case against F. M. Lindley and Lester Lindley on December 8, 1952. Likewise, the liability of Ozark Poultry & Egg, Inc., and of F. M. Lindley to the plaintiff had accrued prior to the time F. M. Lindley transferred the Illinois Central Railroad Company judgment, the $3,400 note and mortgage, the homestead and the other parcel of real property which is now occupied by the Ozark Motor Company, to Mrs. Willie Lindley in January and in February, 1952. Therefore, plaintiff was an existing creditor of the defendant, F. M. Lindley, at the time he made the above-mentioned transfers to his wife, and this is true even though no judgment was rendered against F. M. Lindley until December 8, 1952. American Bonding Co. of Baltimore v. Hord, 8 Cir., 98 F.2d 350. See also Williams v. Bizzell, 11 Ark. 716.

However, regardless of whether a prior or a subsequent creditor is attacking a conveyance, the following rules of law are applied when the facts warrant their application.

■ As to a homestead there can be no creditors and thus there can be no fraudulent conveyance of such property. Davis v. Collums, 205 Ark. 390, 168 S.W.2d 1103; White v. Turner, 203 Ark. 95, 155 S.W.2d 714.

■ An embarrassed debtor may convey his property to one of his creditors in satisfaction of a debt, even though the effect of the conveyance would defeat the remainder of his creditors, but such a conveyance must be made in good faith and for a valid and subsisting indebtedness; if the value of the property is not out of proportion to the debt, such transaction is not fraudulent. Gage v. Chastain, 183 Ark. 641, 37 S.W.2d 705. See also Campbell v. Carlisle, 190 Ark. 1103, 83 S.W.2d 536; Wasson v. Patton, 190 Ark. 397, 79 S.W.2d 276; McCown v. Taylor, 186 Ark. 273, 53 S.W.2d 424; Waters v. Merit Pants Company, 76 Ark. 252, 88 S.W. 879.

■ Before a creditor can complain of a conveyance by a debtor, he must show that he was injured by such a conveyance. In Mente & Co., Inc., v. Westbrook, 181 Ark. 96, at page 102, 24 S.W.2d 976, at page 978, the Court said:

"It is also well settled that, to entitle a creditor to set aside a conveyance as fraudulent, it is necessary, not only that there be fraud on the part of the vendor participated in by the vendee, but also that there be an injury to the person complaining. The creditor who seeks to set aside a conveyance as fraudulent must show that his debtor has disposed of property that might otherwise have been subjected to the satisfaction of his debt."

See also, McCown v. Taylor, supra.

■ While transactions between husband and wife are closely scrutinized, they are, when made in good faith and for a fair consideration, upheld to the same extent as transactions between strangers. McCown v. Taylor, supra.

■ When a husband purchases property with his wife's money, ordinarily she becomes the equitable owner of such property. In Jenkins v. Smith, 170 Ark. 806, at page 808, 281 S.W. 377, the Court said:

"In the first place we think the equitable owner of the 86-acre tract was Mrs. Belle Jenkins. According to the weight of the evidence her money was used in the purchase of the land.

In addition the conveyance was made pursuant to a property settlement agreed upon between the parties several years prior to the execution of the deed. In the second place the circumstances surrounding the transaction do not indicate that the deed was made with a fraudulent intent of defrauding existing or future creditors. There were no known existing creditors of J. R. Jenkins at the time he made the conveyance."

See also Blackwell v. Heard, 212 Ark. 9, 204 S.W.2d 790; McCown v. Taylor, supra; Waters v. Merit Pants Company, ·supra.

In several cases, the Court has specifically pointed out that the property involved was·not purchased with the wife's money, which would indicate that if such property had been purchased with the wife's money, the conveyance would have been valid. Hall v. Weeks, 214 Ark. 703, 708, 217 S.W. 2d 828; Ramsey v. Broyles, 199 Ark. 1161, 137 S.W.2d 744; Eveland v. State, for Use and Benefit of Fossett, 199 Ark. 366, 133 S. W.2d 643.

In determining the rights of the defendant, Mrs. Willie Lindley, it is necessary to ascertain the rights and interest in property of tenants by the entirety under the law of Arkansas.

■ In Arkansas the common-law estate by the entirety in both realty and personalty is well recognized. Cross v. Pharr, 215 Ark. 463, 221 S.W.2d 24; Black v. Black, 199 Ark. 609, 135 S.W.2d 837; Dickson v. Jonesboro Trust Company, 154 Ark. 155, 242 S.W. 57.

By virtue of such an estate, the husband and wife are each entitled to one-half of the. rents and profits from the estate held by the entirety, and the survivor takes all of the property so held. Moore v. Denson, 167 Ark. 134, 268 S.W. 609; Branch v. Polk, 61 Ark. 388, 33 S.W. 424, 30 L.R.A. 324.

■ At common law an estate by the entirety could not be terminated without the mutual consent of the parties. However, the change in the common-law principles of marital unity resulting from passage of the married women's property statutes has prompted the Arkansas Supreme Court to hold that the interest of each spouse in an estate by the entirety may be conveyed or may be subjected to execution for the separate obligations of each. Pope v. McBride, 207 Ark. 940, 184 S.W.2d 259; Campbell v. Carlisle, 190 Ark. 1103, 83 S.W.2d 536; Moore v. Denson, supra.

■ But, neither a conveyance by one tenant by the entirety, nor an execution against such tenant, can in any manner affect the interest of the other tenant. Franks v. Wood, 217 Ark. 10, 228 S.W.2d 480; Pope v. McBride, supra. Thus, a purchaser of the interest of one tenant by the entirety cannot oust the other tenant from possession, and can only claim one-half of the rents and profits. Simpson v. Biffle, 63 Ark. 289, 38 S.W. 345; Roulston v. Hall, 66 Ark. 305, 50 S.W. 690. The remaining tenant is not only entitled to possession plus one-half of the rents and profits, but the right of survivorship is not destroyed or in anywise affected. Pope v. McBride, supra.

Also, the Court has held that where a husband and wife owned property as tenants by the entirety and they sold the property, the proceeds from the sale were owned by them as tenants by the entirety, even though the husband deposited the money in the bank in his own name. Union & Mercantile Trust Co. v. Hudson, 147 Ark. 7, 227 S.W. 1. However, if a husband, with his wife's knowledge and consent, withdraws portions of bank deposits held by them as tenants by the entirety and reduces the same to his separate possession, as to these funds withdrawn by him the estate by the entirety is destroyed. Dickson v. Jonesboro Trust Company, supra.

The application of the foregoing principles of law to the facts in the instant case as found by the Court leads the Court to hold:

(1) The plaintiff was a prior existing creditor of the defendant, F. M. Lindley, at the time he made the transfers complain-

ed of herein. American Bonding Co. of Baltimore v. Hord, supra.

(2) The transfers by the defendant, F. M. Lindley, to his wife, Mrs. Willie Lindley, of the $3,400 mortgage and of his interest in the Springdale property now occupied by the Ozark Motor Company, were both voluntary transfers, and since such transfers have necessarily hindered and delayed creditors, they must be deemed fraudulent regardless of whether the defendant, F. M. Lindley, actually intended to defraud his creditors. Section 68–1302, Arkansas Statutes, supra; Evans v. Cheatham, supra; Brady v. Irby, supra; Wilks v. Vaughan, supra.

(3) The transfers by the defendant, F. M. Lindley, to his wife, Mrs. Willie Lindley, of the Illinois Central Railroad Company judgment and the Southwest Lime Company note and mortgage were not voluntary transfers. Mrs. Willie Lindley used her own money to purchase these two items, and F. M. Lindley merely acted as her agent in purchasing them. Mrs. Lindley paid a good and valuable consideration and was, at all times, the equitable owner; F. M. Lindley at no time had more than a bare legal title to these two items. Therefore, these two transfers were not fraudulent. Blackwell v. Heard, supra; McCown v. Taylor, supra; Jenkins v. Smith, supra; Waters v. Merit Pants Company, supra.

The judgment of the Illinois Central Railroad Company and the mortgage of the Southwest Lime Company were prior in point of time to the judgment of the plaintiff and constituted liens against the property of the Ozark Poultry & Egg, Inc. There is no doubt under the testimony but that the money of Mrs. Willie Lindley discharged these liens insofar as the holders thereof are concerned, and even though F. M. Lindley acted as her agent in the purchase of these liens, the transaction was not fraudulent and the assignment of the liens to Mrs. Lindley did not in any manner hinder or delay the plaintiff in the collection of its judgment. The assignment of these two liens merely leaves the plaintiff exactly where it would be had the assignment not

been made, and in the absence of fraud, Mrs. Lindley should be subrogated to the rights of the Illinois Central Railroad Company and the Southwest Lime Company.

(4) The McDonald County, Missouri, land was purchased by Mrs. Willie Lindley from Sherman Madden in good faith and for a fair consideration. F. M. Lindley had no interest in the land and thus the conveyance was valid. See, McCown v. Taylor, supra.

(5) The transfer by F. M. Lindley to his wife of the homestead was not a fraudulent conveyance. Davis v. Collums, supra; White v. Turner, supra.

(6) As a tenant by the entirety of the Springdale property now occupied by the Ozark Motor Company, Mrs. Willie Lindley is entitled to possession, one-half of the rents and profits, and the right of survivorship in such property, regardless of what disposition is made of her husband's interest in said property. Franks v. Wood, supra; Pope v. McBride, supra; Roulston v. Hall, supra; Simpson v. Biffle, supra.

Conclusions of Law

1.

The Court has jurisdiction of the parties to and the subject matter of this action.

2.

The complaint of the plaintiff as against the defendant, Sherman Madden, should be dismissed.

3.

The transfer by the defendant, F. M. Lindley, to the defendant, Mrs. Willie Lindley, of the judgment of the Circuit Court of Washington County, Arkansas, in favor of the Illinois Central Railroad Company against the Ozark Poultry & Egg, Inc., et al., dated July 9, 1951, and recorded in Civil Record, Volume 28, Page 144, of the records of the Circuit Clerk and Ex-Officio Recorder of Washington County, Arkansas, was a valid transfer and was not a fraud upon the plaintiff.

4.

The transfer by the defendant, F. M. Lindley, to the defendant, Mrs. Willie Lindley, of the note and mortgage executed by the Ozark Poultry & Egg, Inc., to the Southwest Lime Company, and of the accounts and claims of the Southwest Lime Company against the Ozark Poultry & Egg, Inc., et al., which note, mortgage and claims were recited in the judgment of the United States District Court, Western District of Arkansas, Fayetteville Division, in favor of the Southwest Lime Company against Lester Lindley, 12 F.R.D. 484, was a valid transfer and was not a fraud upon the plaintiff.

5.

The conveyance by the defendant, Sherman Madden, and wife, to the defendant, Mrs. Willie Lindley, of the following described property, to-wit:

All of the Southwest quarter of the Northwest quarter of Section twenty seven (27), lying South of Little Sugar Creek, and all of the Southeast quarter of the Northeast quarter of Section Twenty eight (28) lying south of Highway No. 88, all in Township Twenty one (21) Range thirty one (31) West of the 5th P.M. in McDonald County, Missouri,

by a deed dated March 27, 1952, and recorded in Warranty Deed Book No. 126 at Page 535 of the records of the Circuit Clerk and Ex-Officio Recorder of McDonald County, Missouri, was a valid conveyance and was not a fraud upon the plaintiff.

6.

The conveyance by the defendant, F. M. Lindley, to the defendant, Mrs. Willie Lindley, of the following described property situated in Washington County, Arkansas (the homestead), to-wit:

Part of the east half of Block five in the Railroad Addition to the Town (Now City) of Springdale, described as: Beginning at a point 87 feet south of the northeast corner of said Block, and running thence west 94½ feet, to an alley; thence south 87 feet, thence east 94½ feet, to the east line of said Block, thence north 87 feet, to the place of beginning,

by a deed dated February 2, 1952, and recorded in Deed Record, Volume 443, Page 297, of the records of the Circuit Clerk and Ex-Officio Recorder of Washington County, Arkansas, was a valid conveyance and was not a fraud upon the plaintiff.

7.

The assignment by the defendant, F. M. Lindley, to the defendant, Mrs. Willie Lindley, of the $3,400 note and mortgage executed by the Ozark Poultry and Egg, Inc., to the defendant, F. M. Lindley, which mortgage was dated March 1, 1951, and recorded in Mortgage Record, Volume 426, Page 159, of the records of the Circuit Clerk and Ex-Officio Recorder of Washington County, Arkansas, was a fraudulent transfer and assignment as to the plaintiff, and said assignment should be set aside and held for naught.

8.

The property owned by the Ozark Poultry & Egg, Inc., to-wit:

Part of the SE¼ of the NE¼ of Section 35, Township 18 North, Range 30 West, described as beginning 60 rods North of the Southwest corner of said 40 acre tract and running thence East 300 feet, thence North 140 feet, thence West 300 feet, thence South 140 feet to the place of beginning,

may be sold under execution or other process for the collection of the judgment obtained by the plaintiff herein on January 16, 1952, against the Ozark Poultry & Egg, Inc., subject, however, to the following:

First. The amount due on the $10,000 note and mortgage executed by the Ozark Poultry & Egg, Inc., to the Southwest Lime Company, dated May 26, 1950, said note and mortgage now being owned by Mrs. Willie Lindley.

Second. The amount due on the $3,400 note and mortgage executed by the Ozark Poultry & Egg, Inc., to F. M. Lindley, on March 1, 1951, said note and mortgage now being subject to process for the collection

of plaintiff's judgment dated December 8, 1952, against the defendant, F. M. Lindley.

Third. The judgment in favor of the Illinois Central Railroad Company against the Ozark Poultry & Egg, Inc., et al., in the Circuit Court of Washington County, Arkansas, dated July 9, 1951, said judgment now being owned by Mrs. Willie Lindley.

Fourth. Any other valid, prior existing liens, if any, in favor of other parties not involved in this action.

9.

The transfer by the defendant, F. M. Lindley, to the defendant, Mrs. Willie Lindley, of the following described property situated in Washington County, Arkansas (the property now occupied by the Ozark Motor Company), to-wit:

Part of the east half of Block No. five in Railroad Addition to the Town (Now City) of Springdale, described as: Beginning at the northeast corner of said block, and running thence south 87 feet, thence west 94½ feet, to the east line of a 20 foot alley; thence north 87 feet to the north line of said Block, thence east 94½ feet to the place of beginning, being 87 feet squarely off of the north end of Lot one in Block five of said Addition,

by a deed dated February 2, 1952, and recorded in Deed Record, Volume 443, Page 297, of the records of the Circuit Clerk and Ex-Officio Recorder of Washington County, Arkansas, was a fraudulent conveyance as to the plaintiff, and said conveyance should be set aside and held for naught.

The defendant F. M. Lindley's interest in the above-described property is that of a tenant by the entirety, and his interest in said property may be sold under execution or other process for the collection of the plaintiff's judgment against him, subject to the right of Mrs. Willie Lindley as a tenant by the entirety and to the $6,500 mortgage on the property in favor of the First State Bank of Springdale, Arkansas.

A judgment in accordance with the above should be entered, and each party should be required to pay his own costs.